[Crim. No. 209.   In Bank.—August 23, 1897.]

# THE PEOPLE, RESPONDENT, *v.* JOSEPH J. EBANKS, APPELLANT.

CRIMINAL LAW—HOMICIDE—MOTION TO SET ASIDE INFORMATION—LEGAL-
ITY OF COMMITMENT—LAPSE OF TIME AFTER ARREST—APPEAL—LOSS
OF JURISDICTION NOT SHOWN.—Where the record on appeal of a de-
fendant accused of murder shows that he was arrested and held for
preliminary examination on the seventeenth day of September, and
that the order holding the defendant to answer for murder was dated
October 4th of the same year, and that the depositions of the witnesses
taken upon the preliminary examination were used in evidence upon
the hearing of the motion of the defendant to set aside the information,
on the ground that no legal commitment was had, and that the justice
lost jurisdiction of the case before the date of the commitment, but the
depositions are not set forth in the record, and it does not appear but
that the justice may have entered upon the examination immediately
after the arrest, and continued to conduct it until the date of the com-
mitment, no error appears in refusing the motion.

ID.—APPOINTMENT OF REPORTER AT PRELIMINARY EXAMINATION—ERROR
NOT APPEARING.—In the absence of proof in the record that a reporter
had acted or reported the testimony taken at the preliminary examina-
tion, or had certified thereto, no error can be predicated upon the
ground that it does not properly appear that the shorthand reporter
was appointed to take the evidence.

ID.—SIGNATURE OF DISTRICT ATTORNEY TO INFORMATION—OFFICIAL DES-
IGNATION — OMISSION OF NAME OF STATE—JUDICIAL NOTICE.—Where
the information is properly entitled in the county and state, it is a
sufficient compliance with the Penal Code that the information shall
be subscribed by the district attorney, and he is not required to append
the name either of the county or of the state to his signature; and
where he does append the name of the county of which he is district
attorney, but omits therefrom the name of the state, the court will take
judicial notice that the designated county is in the state, and it is not
a ground of objection that the name of the state is not also appended
to his signature.

ID.—SPECIAL VENIRE — CHALLENGE TO PANEL — DISQUALIFICATION OF
SHERIFF — FILING OF SHERIFF'S AFFIDAVIT — HARMLESS RULING. —
Where a challenge to the panel of a special venire of jurors summoned
by the sheriff was sustained, on the ground of the disqualification of
the sheriff by reason of bias, and the testimony of the sheriff proves
the bias, the defendant is not prejudiced by an order directing an affi-
davit to be made and filed by the sheriff embodying the substance of
his testimony, or by an order refusing to strike out the affidavit, it ap-
pearing that the jurors were not present, and that the defendant could
not be injured by the testimony or affidavit of the sheriff, and such
orders can afford no ground of reversal, conceding, without deciding,
that the filing of the affidavit was an irregularity.

ID.—PERMITTING JURORS TO SEPARATE—DISCRETION.—It is matter resting
in the discretion of the court to permit the jurors to separate during
the progress of the trial, upon the several adjournments from day to
day, after properly admonishing them, as provided by section 1122 of
the Penal Code.

ID.—APPOINTMENT OF ELISOR—SICKNESS OF CORONER.—Where it appears
that the sheriff is disqualified from acting by reason of bias, and that,
by reason of sickness, the coroner is physically unable to perform the
duties of his office, the court may appoint an elisor to take charge of the
jury.

ID.—CIRCUMSTANTIAL EVIDENCE—INCIDENT PRIOR TO HOMICIDE—CONDUCT
OF DEFENDANT—SACK AND PISTOL.—Where the homicide was caused
by pistol shots, and the defendant was connected therewith by circum-
stantial evidence, showing, among other circumstances, the possession
by him for several days before the homicide of a white flour sack, and
a pistol of caliber corresponding to the bullets which caused the homi-
cide, which flour sack and contents, including the pistol partially dis-
charged, were afterward found in a thicket of brush near the scene of
the murder, testimony is admissible to show that, during the trip from
the place where the pistol was obtained to the vicinity of the homicide,
defendant, three days prior to the homicide, stopped at a country resi-
dence, with the flour sack in his possession, and that he was discovered
in the evening concealed under a bed, and, when discovered, went out,
carrying his hand as if he were going to shoot, and that, having received
the flour sack, he ran off the place—as an incident throwing light upon
the act of the defendant, his appearance and belongings, at a period not
remote from the day of the alleged murder.

ID.—EVIDENCE TENDING TO ESTABLISH OFFENSE CHARGED—ATTEMPT TO
COMMIT ANOTHER OFFENSE.—Although ordinarily evidence of another
offense cannot be given, yet, whenever the case is such that proof of
one crime tends to prove any fact material in the trial of another, such
proof is admissible, and the fact that it may tend to prejudice the
defendant in the minds of the jurors is no ground for its exclusion;
and where the evidence tends to establish the offense charged, the fact
that it tends also to show an attempt of the defendant to commit an-
other offense does not render it inadmissible.

ID.— CROSS-EXAMINATION OF DEFENDANT — INCOMPLETE RECORD — ERROR
NOT PRESUMED.—Where the scope of the testimony given by the de-
fendant in his examination in chief shows that the questions propounded
to him on cross-examination were within the rules enunciated by this
court in previous decisions, or were unproductive of injury to the de-
fendant, there is no ground of reversal therefor; and where the record
does not contain all of the defendant's examination in chief, it will not
be presumed that the cross-examination was improperly allowed upon
matter not testified to by the defendant in chief.

ID.—EXPERT EVIDENCE—HYPNOTISM OF DEFENDANT—OFFER OF PROOF—
INSTRUCTION. — Expert evidence of a hypnotist is not admissible to
show that the defendant, when hypnotized by him, had made a state-
ment to him in regard to his knowledge of the homicide, and had de-
nied his guilt while in that condition, from which statements he was
ready to testify that defendant is not guilty; and, after rejection of the

offer of such evidence, it is proper for the court to instruct the jury to disregard the offer, and that the law does not recognize hypnotism.

ID.—TRIAL UPON INFORMATION—GRAND JUROR ACTING AS TRIAL JUROR— IMPROPER CHALLENGE.—Upon the trial of a defendant upon information, where it appears that the grand jury had had nothing to do with the case, it is not ground for challenge to a trial juror that he is a member of a grand jury which was assembled after the information was filed, and which had taken a recess to meet in the future, and had not been discharged.

ID.—DEATH WARRANT—ORDER AFTER JUDGMENT—APPEAL—REVIEW.— Where a death warrant is signed by the superior judge after the entry of judgment, it is appealable as an order made after judgment, and, when not separately appealed from, cannot be reviewed on appeal from the judgment and from an order denying a new trial.

ID.—REASONABLE DOUBT—INSTRUCTIONS REFUSED AND GIVEN—AMBIGUOUS REQUEST—UNSUITABLE PROPOSITIONS.—Where the instructions given by the court state the whole doctrine of reasonable doubt fully and properly to the jury, and taken as a whole, are as favorable to the defendants as the facts and the law will warrant, it is not error to refuse instructions requested by the defendant upon the subject of reasonable doubt, especially where the meaning of one of them is involved in doubt, and another asserts the uncalled-for proposition that "it is better that a hundred guilty persons escape punishment than that one who is innocent be punished."

APPEAL from a judgment of the Superior Court of San Diego County and from orders refusing to arrest the judgment and denying a new trial. W. L. PIERCE, Judge.

The facts are stated in the opinion.

*J. S. Callen*, for Appellant.

*W. F. Fitzgerald, Attorney General*, and *Henry E. Carter, Deputy Attorney General*, for Respondent.

SEARLS, C.—The defendant, Joseph Japhet Ebanks, was charged by information with the murder of Harriet Stiles, at the county of San Diego, state of California, on the tenth day of September, 1895, and, upon a trial had under said information, was convicted of murder in the first degree, and sentenced to death.

Defendant appeals from the judgment, and from an order denying his motion for a new trial.

Defendant moved to set aside the information upon

the grounds: 1. That, before the filing thereof, the defendant had not been legally committed by a magistrate; 2. That it was not subscribed by the district attorney of the county of San Diego, state of California.

The record shows that a complaint was filed with the justice, a warrant issued, the defendant arrested and committed for examination on the seventeenth day of September, 1895. The order holding the defendant to answer for the crime of murder is dated October 4, 1895. The contention is that it does not appear that the defendant was given an examination until said last-mentioned date, and hence that the justice lost jurisdiction of the case.

The record shows that, at the hearing of the motion to set aside the information, among other things, the depositions of the witnesses taken upon the preliminary examination of the defendant were in evidence, but they are not set out in the record, and when they were taken does not appear. *Non constat,* but that the justice may have entered upon the examination immediately after the seventeenth day of September, and continued to conduct the same until October 4th, the date of the commitment.

It is further objected that there is no evidence that any shorthand reporter was appointed to take the evidence at the preliminary examination, except the certificate of the reporter himself.

I find no such certificate in the record, and no evidence that a shorthand reporter was appointed or acted, except that in the judgment-roll, under the head of proceedings in the superior court of November 21, 1895, the following entry: " The following appears by the transcript thereof filed in the superior court, to wit: . . . . Fred H. Robinson is appointed to act as shorthand reporter."

Counsel refers to folio 210 of the record in support of this contention, but folio 210 in the transcript is a blank.

If, however, it be true that Robinson was not ap-

pointed reporter in the justice court, we fail, in the absence of proof that he acted or reported the testimony or certified thereto, to see how error can be predicated thereon. The further objection that the information was not properly signed by the district attorney is without merit. The information is entitled, "In the superior court of the County of San Diego, State of California." In the body of the information it is charged that the defendant "at the said county of San Diego, in the said state of California," etc., and it is signed by A. H. Sweet, district attorney of the said county of San Diego.

The objection is that the officer omitted the words "the state of California" after the words "county of San Diego."

Section 809 of the Penal Code requires that the information shall be "subscribed by the district attorney," but does not require him to add to his signature the name of the county, or of the state.

In *People* v. *Ashnauer*, 47 Cal. 98, the district attorney signed an indictment "Henry Starr, district attorney," without adding the name of the county, and it was held sufficient. The courts will take judicial notice that the county of San Diego is in the state of California. (*Humboldt County* v. *Dinsmore*, 75 Cal. 604.) The motion to set aside the information and the demurrer thereto, for like and other causes, were both properly overruled.

At the trial the regular panel of jurors drawn having been exhausted without securing a sufficient number of competent jurors, a special venire issued to the sheriff commanding him to summon additional persons to act as jurors. Counsel for defendant interposed a challenge to the panel under this special venire, upon the ground of the sheriff being disqualified by reason of bias, etc. The challenge was traversed by the district attorney; all the jurors, including those accepted and those summoned under the special venire, were excluded from the courtroom, testimony taken; the sheriff testifying to facts clearly showing him to have been biased and to having had and expressed an unqualified opinion,

etc.; whereupon the people confessed the challenge and the court directed an affidavit to be made by the sheriff embodying the substance of his testimony as given, which was verified and filed, the challenge sustained, and a venire issued to the coroner.

Defendant objected to filing the affidavit, moved to strike it out, and predicates error on the action of the court in refusing so to do. It would seem to the ordinary mind that the defendant having secured the only object of his challenge, it could matter but little to him as to the form in which the facts appeared of record, where, as here, the jurors were not present, and he could by no possibility be injured by the testimony or affidavit. Conceding, therefore, without deciding, that filing the affidavit was an irregularity, it was one which did not injure the defendant, and affords no ground for reversal. (Pen. Code, sec. 1258.)

During the progress of the trial the court, upon the several adjournments from day to day, after admonishing the jurors as provided by section 1122 of the Penal Code, permitted them to separate, and this is assigned as error. This was a matter resting in the discretion of the court, and was not error. (Pen. Code, sec. 1121.) The next error assigned is as follows: "The jury retire in charge of B. P. Hill, elisor. (See folio 277.) The minutes of the clerk and the records fail to show any disqualification of the coroner."

Had the learned counsel turned to folios 274, 275, he would have seen that an affidavit was filed showing that by reason of sickness the coroner was physically unable to perform the duty of coroner; that the sheriff and his deputies were disqualified therefrom, and that therefore Benj. P. Hill was appointed as elisor to take charge of the jury, etc. Under the circumstances, this was entirely proper.

At this point, and to the end that some of the objections taken to the introduction and refusal by the court to permit the introduction of evidence may be the bet-

ter understood, it is necessary to state the more salient facts in the case.

On the sixth day of September, 1895, Leroy R. Stiles, aged sixty-five years, his wife, Harriet Stiles, aged sixty years; and J. B. Borden, the father of Mrs. Stiles, aged eighty-five years, all residents of Riverside, went to the ocean beach about fifteen miles above Oceanside, in the county of San Diego, for a week's recreation. They were camped in a tent on the beach. On the morning of the tenth day of September, 1895, Mr. Stiles, accompanied by Mr. Borden, left Mrs. Stiles at the tent and went up the beach a distance of say one and one-half miles, Mr. Stiles fishing as he went along and Mr. Borden accompanying him. While fishing, Mr. Stiles saw two men on the bluff above him who were going south down the coast toward his tent, and soon after called the attention of Borden to the fact, and advised the latter to return to the tent, as the strangers might frighten or annoy Mrs. Stiles. Mr. Borden started for the tent, which was not in sight from Stiles' position. Some time later, and probably about 10:30 A. M., Mr. Stiles started back for his camp, and on reaching the tent found Mrs. Stiles and her father, Borden, both dead in the tent.

The death of Borden was caused by two bullet wounds, one in the head and the other in the left breast; and the body of Harriet Stiles showed that she had received three wounds, which were caused by two bullets. An autopsy showed that one bullet had passed through the body of Borden, through a gunny sack upon which he was lying, and was found in the sand under him. Another bullet had passed through a cot which was in the tent. The wounds and the bullet found indicated that they were fired from a 45-caliber Colt's revolver.

The testimony connecting the defendant with the murder was circumstantial, and, as is frequently the case where circumstantial evidence is relied upon to convict, consisted of a long chain of circumstances.

Defendant made a statement after his arrest, to the officers, and was also a witness in his own behalf.

According to his own testimony he had resided in San Diego in the summer of 1895 and had become interested in religious subjects, and in July of that year he went from San Diego in part on foot, in part by rail, and in part by wagon, to the vicinity of Downey to attend a camp meeting of Adventists, Salvationists, or some other religious sect. He seems to have spent his time at Downey and in that vicinity until about the 6th of September, with the exception of a trip to San Pedro, where he worked nearly a week, and then returned to Fullerton, a town or village a few miles from Downey, Anaheim, etc.

He had made the acquaintance of an aged member of the society holding the camp meeting, by the name of Adams, who resided in Fullerton, and who permitted him to sleep in a room in his house when in town. When he left Fullerton two pistols which had been left in the room occupied by him, one a large white-handled Colts' revolver of 45 caliber and the other a smaller one, a cartridge belt with ammunition in it, a dagger, two shirts, all of which belong to R. F. Gibson, were missing. The larger revolver and the shirts had the initials of the owner, R. F. G., marked upon them. A coat and a few other things were taken from the same room at the same time.

Defendant testified and admitted that for the last few nights he occupied the room in Adams' house (also spoken of as the Adams & Baxter house), he was excessively drunk and knew little or nothing of what occurred; admitted that he had a faint recollection of taking and pawning or selling the smaller revolver, and that a day or two later he found himself on his way toward San Diego with the coat, but denied emphatically the taking, or possession of, the large white-handled revolver, or that he had any revolver, or that he had a flour sack in which he carried clothes or other things, but averred that he did have a bundle in a white handkerchief or

handkerchiefs. The question as to the large white-handled pistol and the flour sack became leading factors in the case, as we shall presently see.

Several persons in Fullerton and vicinity saw a large white-handled pistol in the hands of defendant at Fullerton, saw him with a white flour sack, and one person saw him place the pistol, belt, etc., in the sack. One of the witnesses who saw the pistol was familiar with it, and asked defendant if it was not "Gibson's gun," and he answered "No." One or two other witnesses who were familiar with the Gibson pistol saw the one with defendant and said it resembled it, and they thought it the same, and one of them recognized the scabbard by a patch on it.

From the 6th of September until the 9th, several witnesses met and saw defendant on his way to San Diego with a flour sack and some hard substance in it which caused the sack to protrude; one thought it probably a boot heel; another, the handle of a frying-pan, etc.

On the 9th of September, defendant met one Garges near El Toro station, and they traveled south together, walking on the railroad track. Garges was a repairer of watches and clocks, and was plying his vocation about the country. He describes defendant as carrying a white flour sack, which he says, "appeared to be an empty flour sack, something more than half full." It appeared to have clothing in it, and some hard substance, like a cooking utensil. They walked south that day, slept in the open air at night, and on the morning of the 10th defendant stopped at a section-house on the railroad at San Onofre, procured some bread from a lady named Florence Steele, who wrapped it in a newspaper called the "Ladies' World," from which she had made a clipping, which paper she identified afterward as stated herein. They followed the railroad south, saw a man fishing (presumably Stiles), and later a tent on the beach and a person apparently bathing in the surf, who defendant said was a woman.

Defendant fell behind at this point and was soon lost

sight of by Garges, who continued on his journey until, say, 2 o'clock P. M., of the same day, when, while resting, he was again joined by the defendant, who said that, having lost Garges, he thought the latter had taken the wagon road, and that he, defendant, had done the same, etc. They parted soon after, Garges leaving the main line of road to go to Fallbrook, and defendant going to San Diego, where he arrived on the night of September 11th, when he visited the room of an acquaintance, requested permission to sleep with him and to be put on board an English ship in the stream and about to sail in the morning. This was declined, and defendant requested his friend to say nothing of his presence there. He was arrested a few days later some thirty miles in the interior, where he said he had gone to hunt work. Over two months later a white flour sack, much soiled and resembling that carried by defendant, was found in a thicket of brush near the scene of the murder, containing Gibson's revolver, with four chambers of the cylinder containing empty, and two chambers loaded, cartridges, with the belt, cartridges, dagger, one of Gibson's shirts with his initials on it, a few slices of bread wrapped in the newspaper identified by Florence Steele, etc. The other shirt of Gibson, and the coat taken from the same room were on the person of defendant when arrested.

It should also be stated that Garges testified that when defendant joined him on the afternoon of the 10th of September he did not have the flour sack which he had previously carried. Also that Stiles had a small bag of Durham smoking tobacco in his tent which was missing after the murder, and that defendant, who had been previously begging tobacco, had, when he rejoined Garges, a sack of Durham smoking tobacco. There are other inculpating circumstances, but these are deemed sufficient to show: 1. That the evidence was sufficient to warrant a verdict of guilty; 2. To show by the character of the testimony that the objections to evidence which must, in the aggregate, reach into the hundreds,

and which cannot be considered in detail, were mainly destitute of merit.

We here notice what the learned counsel for appellant terms a flagrant and gross error on the part of the court in the admission of evidence and refusal to strike out the same, and which he asserts calls for reversal.

The testimony of Mrs. Aurelia Price was to the effect that she resided nearly two miles south of Santa Ana and some ten miles from Fullerton; that on the seventh day of September defendant came to their place with the white flour sack so often described. She described his dress, etc., and identified the sack presented in court as one like that carried. On the next day, viz., Sunday, September 8th, about 11 o'clock A. M., he came again to the Price ranch or house with the same sack, etc. At 7 P. M. of the same day Mrs. Price entered her bedroom, and, smelling the fumes of tobacco, which her husband did not use, she lighted a lamp and looked under the bed, where she found the defendant, who rushed out, and before the witness could get to a shotgun he was out of the door, and from the manner he carried his hand, she thought he was going to shoot, altough she did not see a pistol, and witness ran out of doors. Defendant came to a screen, and witness asked him if his sack was in the house, and he said yes; witness went into the house after it and defendant ran off the place. The husband of witness was at the barn when this occurred.

It will be borne in mind that the incident related is one occurring during the trip of defendant from Fullerton to San Diego, and that it occurred during and at the time when defendant afterward testified that he was at least partially unconscious from intoxication. The Sunday morning alluded to is that mentioned by him as succeeding the night when he slept in a box-car near Santa Ana and first found he had the coat, but did not know how he came by it, etc.

The declared object of the prosecution was to show his conversation in reference to the sack and to show that defendant had a pistol.

In the latter respect the testimony of the witness only showed that from defendant's actions she thought he had one, but the evidence was admissible as an incident throwing light upon the acts of defendant, his appearance and his belongings, at a period not remote from the tenth day of September, the day of the alleged murder.

As was said in *People* v. *Rolfe*, 61 Cal. 541: "It all consisted of circumstances more or less direct, tending to connect the defendant with the perpetration of the robbery and to establish his guilt, evidence that he was seen at different places not far distant from the robbery, and on days not remote from that on which the crime was committed; that he was seen in company with Hampton, the accomplice, who was used as a witness on behalf of the state; that they were armed, one with a rifle and pistol, and the other with a shotgun; that they had the same dog with them; that they stopped at certain houses, procured meals there, and walked off in certain directions; that they made various inquiries, and otherwise conducted themselves in a suspicious manner, were all circumstances in the case which were properly submitted to the jury."

Touching the suggestion of counsel that the evidence tended to prove the attempt of defendant to commit another offense, and thus to prejudice him in the eyes of the jury, the case of *People* v. *Walters*, 98 Cal. 138, is in point. In that case the court, speaking through Beatty, C. J., said: "It is true that in trying a person charged with one offense, it is ordinarily inadmissible to offer proof of another and distinct offense, but this, only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion. These remarks are applicable to any case in which two persons are murdered or

assaulted at the same time, and as part of the same transaction. (See, also, *People* v. *Cunningham,* 66 Cal. 668; *People* v. *Smith,* 106 Cal. 74, 82; *People* v. *Craig,* 111 Cal. 460, 468; *People* v. *Bidleman,* 104 Cal. 613; *People* v. *Lane,* 101 Cal. 517; *People* v. *Walters, supra; People* v. *McGilver,* 67 Cal. 55; *People* v. *Sanders,* 114 Cal. 216; *Moore* v. *United States,* 150 U. S. 57; *People* v. *Harris,* 136 N. Y. 423; *Pierson* v. *People,* 79 N. Y. 424; 35 Am. Rep. 524; *Commonwealth* v. *Coe,* 115 Mass. 481, 501; *Commonwealth* v. *McCarthy,* 119 Mass. 354, 355; *State* v. *Patza,* 3 La. Ann. 512; *Kramer* v. *Commonwealth,* 87 Pa. St. 299, 301; *Goersen* v. *Commonwealth,* 99 Pa. St. 388, 399; *Swan* v. *Commonwealth,* 104 Pa. St. 218, 220; *Goerson* v. *Commonwealth,* 106 Pa. St. 477, 496; 51 Am. Rep. 534; *State* v. *Myers,* 82 Mo. 558; 52 Am. Rep. 389.) These cases are quoted and cited to meet not only the foregoing point, but many other objections offered in the trial of the cause, which space will not permit us to discuss at length, among which may be mentioned objections to evidence of the death of Borden, the bullet and cot offered in evidence, the taking of the pistols and clothing at Fullerton, etc.

There is a large group of objections made by defendant to questions put to him on cross-examination, upon the ground, so far as we can determine, that they were not legitimate cross-examination, or in explanation of anything he had testified to in chief. The only reference made to most of them is in the following style:

" The matter elicited over the objection of defendant in folio 1608 was clearly error and prejudice."

" The objection was well taken to the introduction of the testimony admitted." (See folios 1661, 1662, 1664, 1666, 1667, 1670, 1672, 1673, 1674, 1675, 1676, 1678, 1679, 1680.)

We shall content ourselves with saying that a careful review of the scope of the testimony given by the defendant in his examination in chief leads to the conclusion that one and all of the questions propounded to him on cross-examination were within the rules enunci-

ated by this court in previous decisions, or were unproductive of injury to defendant. (*People* v. *Russell*, 46 Cal. 123; *People* v. *Lee Ah Yute*, 60 Cal. 96; *People* v. *Robles*, 29 Cal. 421; *People* v. *Murray*, 85 Cal. 350; *Sharp* v. *Hoffman*, 79 Cal. 404; *Jackson* v. *Feather River etc. Water Co.*, 14 Cal. 24; *Neal* v. *Neal*, 58 Cal. 287; *Harper* v. *Lamping*, 33 Cal. 641.)

Defendant was asked on cross-examination concerning a trip made by him in, say, April, 1895, to Los Angeles. This may or may not have been proper. The record does not contain all of defendant's testimony on direct examination.

It shows that on January 16, 1896, " Joseph Japhet Ebanks (defendant) resumes the stand and proceeds with the question, ' You spoke about your parentage yesterday, Mr. Ebanks. What nationality was your father ? You said your parents were European,' etc." None of his testimony of the previous day is in the record, and he may have testified as to his visit to Los Angeles. Error must affirmatively appear and will not be presumed. (*People* v. *Winters*, 29 Cal. 658; *People* v. *Barton*, 88 Cal. 176; *People* v. *Gibson*, 106 Cal. 458; *People* v. *Reilly*, 106 Cal. 648.) But, as stated above, if this is not correct there was nothing in his answers which could have injured defendant.

Defendant called as a witness one B. A. Stephens, and offered to prove by him that he was an expert hypnotist, that he had hypnotized defendant, and that when hypnotized defendant had made a statement to him in regard to his knowledge of the affair, from which statement witness is ready to testify that the defendant is not guilty and that defendant denied his guilt while in that condition. The court sustained an objection to the testimony.

The court said: "The law of the United States does not recognize hypnotism. It would be an illegal defense, and I cannot admit it." The court then repeated in substance what it had said to the jury, and told them to disregard the offer.

We shall not stop to argue the point and only add *the court was right.* After the trial had been pending some ten days, but before the prosecution closed its case, counsel for the defendant interposed a challenge to W. A. Begole, one of the jurors impaneled to try said cause, upon the ground that he was a member of the grand jury of the county which had been impaneled before the trial of this case came on, had taken a recess to meet in the future and had not yet been discharged, and that such facts were unknown to the defendant or his counsel at the time said Begole was accepted as a juror in this case. The challenge was denied.

The defendant was prosecuted by information filed long before the grand jury met, and there is no intimation that it ever had anything to do with this case.

"Having served on a grand jury which found the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment or information," afford grounds for challenge. (Pen. Code, sec. 1074.) But this case does not come within that provision. Appellant gives us no reason for holding the juror incompetent, and we know of none. We find no error in the rulings of the court upon impaneling the jury.

It is urged that the death warrant was on the ninth day of April, 1896, signed by the superior judge, "not in the presence of the defendant, nor in the presence of his counsel, and without the knowledge or consent of the counsel of defendant, or of the defendant himself."

The judgment was entered April 6, 1896, consequently the order referred to was an order made after judgment, from which an appeal will lie under section 1237 of the Penal Code. (*People* v. *Sprague,* 54 Cal. 92; *People* v. *McNulty,* 95 Cal. 594.)

Defendant has appealed from the judgment and from an order denying his motion for a new trial, but not from the order made after final judgment of which he now complains.

The court refused to give two instructions asked by the defendant which are as follows:

" The jury are instructed that if there is any one single fact proved to the satisfaction of the jury, by a preponderance of evidence, which is inconsistent with the guilt of the defendant to raise a reasonable doubt, and the jury should acquit the defendant."

" Refused.    Pierce, J."

" You are instructed that it is the settled policy of the law that a person charged with a crime must be acquitted unless the evidence in the case establishes his guilt beyond all reasonable doubt, and it is better that a hundred guilty persons escape punishment than that one who is innocent be punished."

" Refused.    Pierce, J."

The meaning of the first of these instructions is involved in doubt, and the final clause of the second instruction is uncalled for.

The whole doctrine of reasonable doubt was fully and properly laid before the jury by the court in the instructions which it gave, apparently on its own motion, and also in those given on behalf of defendant, marked 1, 2, 4, 5, 6, 8, 10, 11, and 12.  We quote the 5, 6, and 8 of those instructions of the defendant given by the court. They are as follows:

"It is not sufficient to warrant a conviction in a criminal case that the evidence is merely such that a man of prudence would act upon it in his own affairs of the greatest importance.   Men frequently act in their own grave and important concerns without a firm conviction that a conclusion upon which they proceed to act is correct; but, having deliberately weighed all the facts and circumstances known to them, they form a conclusion upon which they proceed to act, although they may not be fully convinced of its correctness.   But this degree of certainty is wholly insufficient to authorize a verdict of guilty in a criminal case.   In such a case the jury should be fully convinced of the correctness of their conclusion that the defendant is guilty, and that con-

viction should be so clear and strong as to exclude from their minds all reasonable doubt that their conclusion is correct.

"Given. Pierce, J.

"6. You are instructed that mere probabilities are not sufficient to warrant conviction, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegation of the information; nor is it sufficient that upon the doctrine of chances, it is more probable that the defendant is guilty than that he is innocent. To warrant a conviction the defendant must be proved to be guilty so clearly and conclusively that there is no reasonable doubt upon which he can be innocent when all the evidence in the case is considered together.

"Given. Pierce, J."

"8. The court further instructs the jury that in this case the law does not require of the defendant that he prove himself innocent, but the law imposes upon the prosecution to prove that the defendant is guilty in the manner and form charged in the information to the satisfaction of the jury beyond all reasonable doubt, and unless this has been done, it is your duty to find the defendant not guilty.

"Given. Pierce, J."

The instructions, taken as a whole, are quite as favorable to the defendant as the facts and law will warrant.

The other alleged errors need not be noticed. We have studied the printed record of six hundred and ninety-six pages with the care and solicitude which the importance of the case and the grave results to the defendant demand at our hands, and, as a result, we recommend that the judgment and order appealed from be affirmed, and that the court below be directed to bring the defendant before it and then and there fix a day for carrying the judgment into execution.

Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the

judgment and order appealed from are affirmed, and the court below is directed to bring the defendant before it and then and there fix a day for carrying the judgment into execution.

> HARRISON, J.,    GAROUTTE, J.,
> TEMPLE, J.,    BEATTY, C. J.

McFARLAND, J., concurring.—I concur in the judgment and in the opinion of Mr. Commissioner Searls; but what is said in the opinion on the subject of hypnotism must be taken as applicable to the testimony offered on that subject in this case (which was clearly inadmissible), and not as covering the whole subject. It will not be necessary to determine whether or not testimony tending to show that a defendant committed the act charged while in a hypnotic condition is admissible until a case involving that precise question shall be presented.

HENSHAW, J., and VAN FLEET, J., concurred.