[Crim. No. 371. In Bank.—October 5, 1898.]

THE PEOPLE, Respondent, v. MANUEL FELLOWS, Appellant.

CRIMINAL LAW—SPECIAL VENIRE—APPOINTMENT OF ELISOR—CHALLENGE TO PANEL—REVIEW OF ERROR.—The irregular appointment of an elisor to summon a special venire of jurors in a criminal case is not ground for a challenge to the panel, if it does not appear that the elisor was biased or prejudiced; but where an exception was reserved to the order of appointment, it may be reviewed upon appeal as an alleged error at law occurring during the course of the trial.

ID.—POWER TO APPOINT ELISOR—DISQUALIFICATION OF SHERIFF AND CORONER.—Under section 4192 of the Political Code, which must be construed together with section 226 of the Code of Civil Procedure, the court has no power to appoint an elisor, unless it appears that both the sheriff and the coroner are disqualified; and an appointment of an elisor to summon a jury under the latter sec-

tion, by reason merely of the disqualification of the sheriff, without a showing that the coroner was also disqualified, or unable to act, is erroneous.

Id.—Bias of Sheriff—Charge of Retiring Jury.—A sheriff who has been proved to be disqualified for bias to summon a jury should not be intrusted with the charge of the jury when retiring to deliberate upon their verdict; but the court should put them in charge of the coroner, or of an elisor, if the coroner is shown to be disqualified or unable to act.

Id.—Instruction as to Reasonable Doubt.—An instruction as to reasonable doubt, given in the approved language of Chief Justice Shaw, is free from error; and it is the better practice to confine the instruction on that subject to that language, and not to run the risk of error by complex variations of verbiage.

Id.—Insanity Produced by Intoxication—Voluntary Act—General Insanity.—A sane person who voluntarily becomes intoxicated is not excused for the commission of a crime because of any mental derangement, *mania a potu*, or insanity produced by and consequent upon his own voluntary act; but if, by reason of long-continued indulgence in drink, the brain has become permanently diseased, and general insanity has resulted, so that the victim is incapable of distinguishing right from wrong, he is not legally responsible for his acts.

Id.—Conflicting Instructions as to Insanity.—Conflicting instructions concerning insanity produced by intoxication, which do not emphasize the distinction between insanity induced by the voluntary act of a sane person in becoming intoxicated, and general insanity resulting from chronic alcoholism, and which leave the subject confused and confusing, are erroneous.

Id.—Manslaughter—Inapplicable Instruction.—Where there is no evidence tending to reduce the crime of murder charged against the defendant to the grade of manslaughter, it is not error for the court to refuse an instruction upon the crime of manslaughter.

APPEAL from a judgment of the Superior Court of Orange County and from an order denying a new trial. J. W. Ballard, Judge.

The facts are stated in the opinion of the court.

Scarborough & Matthews, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

HENSHAW, J.—Defendant, convicted of murder in the first degree for the killing of one Dolores Garcia, appeals from the judgment and from the order denying him a new trial.

1. Dolores Garcia kept a saloon in the little town of San Juan Capistrano. The defendant was a farmer and vacquero. He drank much, and usually made himself drunk when he came into town. At the same time he was not incapacitated by drink from attending to his usual vocation. In the past he had had some business trouble with the deceased, and frequently referred to that trouble, and evinced his hostility toward Garcia when he had been drinking. He said that Garcia "had done him up for a hundred dollars, and that he would do Garcia up anywhere he met him." Upon the afternoon of June 16, 1897, he came into the town of San Juan Capistrano upon horseback, carrying a heavy rifle. He had been drinking and continued to drink. To several people whom he met upon his way to the town, and to others with whom he talked after he arrived at the town, he declared his intention of killing Garcia. Between 8 and 9 o'clock in the evening he met Pedro Lebatt, who was "pretty intimate with him," and to him declared his purpose and offered Lebatt first twenty-five cents, and then a dollar, to go to the saloon of Dolores and see who might be there. At that time defendant was carrying his rifle. Lebatt refused to go, and they separated. About 9 o'clock in the evening the report of a rifle was heard in the neighborhood of Garcia's saloon, and upon hurrying to the spot the citizens found Garcia shot through the head by a heavy rifle bullet. A short time after the shooting defendant appeared at the house of one Concepcion Guingochea, and explained to him that he had killed Dolores, and that he had left his rifle about twenty yards from the corner of the street. He desired Guingochea to send the rifle to the town of San Mateo, and in that way he thought he could clear himself. The defendant handed over to the witness the cartridge belt which he wore, and then rode on into town. Guingochea informed the constable, and together they found the rifle of the defendant at the spot he had indicated. About half past nine that night Pryor, the constable, met the defendant upon the street, mentioned the killing of Garcia, and asked him if he was the one that had done the deed. Defendant answered that he was, and that he had given his rifle to one Cuevas to take down to San Mateo.

This is substantially all of the evidence in the case. Upon

the part of the defendant no evidence was introduced, further than testimony to the effect that the defendant was and had been a "hard drinker" for many years; that he did not refer to his trouble with deceased except when he had been drinking, and that he had been drinking heavily during the afternoon and evening of the day of the homicide.

We think this naked statement of the facts sufficiently answers appellant's contention that the verdict is against the evidence.

2. The regular panel was exhausted in securing the jury, and a special venire was issued, directed to the sheriff. Upon its return defendant interposed a challenge to the panel upon the ground of the bias and prejudice of the sheriff who had summoned the members of it. The challenge was sustained, and a new venire ordered to issue, directed to and placed in the hands of an elisor named in the order. No showing was made that the coroner was likewise disqualified. To this order defendant reserved an exception. He also interposed a challenge to the panel thus formed. (Pen. Code, sec. 1064.) As it did not appear that the elisor was biased or prejudiced, and as that is the only ground of challenge contemplated by section 1064, defendant's objection to the panel may not be considered. (*People v. Welch*, 49 Cal. 174.) But defendant reserved his exception to the order appointing an elisor. His point is, that the order was error in the absence of a satisfactory showing that the coroner also was disqualified, or, in other words, that the special venire under the circumstances shown should have been directed to and returned by that officer. Therefore, defendant is entitled to a consideration of the question as an alleged error at law occurring during the course of the trial.

Section 4192 of the Political Code provides as follows: "Process and orders in an action or proceeding may be executed by a person residing in the county designated by the court, the judge thereof or a county judge, and denominated an elisor, in the following cases: 1. When the sheriff and coroner are both parties; . . . . 3. When either of these officers is a party, and there is a vacancy in the office of the other, or when it appears by affidavit to the satisfaction of the court in which the proceeding is pending, or the judge thereof, that both of these

officers are disqualified, or by reason of any bias, prejudice or other cause, would not act promptly or impartially."

Section 226 of the Code of Civil Procedure provides: "Whenever jurors are not drawn or summoned to attend any court of record or session thereof, or a sufficient number of jurors fail to appear, such court may order a sufficient number to be forthwith drawn and summoned to attend the court, or it may, by an order entered in its minutes, direct the sheriff or an elisor chosen by the court forthwith to summon so many good and lawful men of the county," et cetera. The codes are to be construed as one statute. (Pol. Code, sec. 4480.) So construing these provisions, it is clear that the Political Code limits and defines the power of a court in appointing an elisor, and enumerates the circumstances under which such an appointment is permissible. When the sheriff is disqualified, the duty in the first instance is always cast upon the coroner. When both are disqualified, then only may an elisor be nominated. And this, it is to be observed, is not a departure from, but is in strict adherence to, the rule of common law. (3 Blackstone's Commentaries, 355.) Section 226 of the Code of Civil Procedure, upon the other hand, is directed to the mode of completing the jury, when from the regular list a sufficient number shall not be in attendance. The declaration that the court shall direct "the sheriff or an elisor" to summon so many men very obviously means that an elisor shall summon in those instances in which the court is authorized to appoint an elisor. To determine whether such an instance has arisen, reference must be had to section 4192 of the Political Code. (*Bruner v. Superior Court*, 92 Cal. 239.)

The omission to name the coroner in section 226 of the Code of Civil Procedure is not significant, for by operation of law, clearly expressed in another section of the code, which section must be construed with section 226, the coroner must act in such a case, when the sheriff is disqualified, and the need of an elisor, as well as the power to appoint him, only exists upon a showing of the disqualification or inability of both to act. In *Wilson v. Roach*, 4 Cal. 362, the court says: "The objection that the elisor was improperly appointed is not well taken. The sheriff and coroner had been made defendants. In the event of their disqualification the court had the power to appoint an

·elisor." · In *Pacheco v. Hunsacker,* 14 Cal. 124, the sheriff was disqualified and this court said: "There being no coroner, the appointment of an elisor to perform this service (summoning a special jury) was proper." The statute at this time, however, provided only that the sheriff might summon. (Stats. 1852, sec. 16, p. 109.) In *People v. Young,* 108 Cal. 8, an elisor was appointed, but only after a showing that both sheriff and coroner were disqualified. The proceeding was upheld. In *People v. Ebanks,* 117 Cal. 652, upon proof of the sheriff's disqualification, a special venire was ordered summoned by the coroner. When the time came for the jury to retire, affidavits were presented showing the inability of the coroner to act by reason of sickness, whereupon the court appointed an elisor. These proceedings were held to be regular.

For the reasons indicated, the order appointing an elisor in this case, in the absence of a showing of disqualification upon the part of the coroner, was erroneous.

3. Notwithstanding the proof of the sheriff's disqualification for bias, when it came time for the jury to retire to deliberate upon its verdict, the sheriff, under defendant's objection and exception, was given charge of it. While no statute or code provision speaks expressly upon the subject, it is apparent that the same reasons which forbid the sheriff to summon jurors when he is biased should forbid his being intrusted with the care of such jury when it retires to deliberate. The proper course to have pursued was that adopted in *People v. Ebanks, supra.*

4. The court gave the well-known, oft-approved, and readily comprehended definition of reasonable doubt laid down by Chief Justice Shaw. But, following a practice repeatedly disapproved and deplored by this court, it elaborated the simple theme of the definition till its meaning was wellnigh lost in complex variations of verbiage. It is not necessary here to say whether or not the result was error. Assuredly, it was dangerously close to error. But let us again repeat that upon the doctrine of reasonable doubt an instruction is certainly free from error if the trial judge will but content himself with giving the definition of Chief Justice Shaw. As to the need of further exposition of the subject, it may be said that if a juror cannot comprehend that definition, a trial judge may well despair of enlightening such an intelligence by·any efforts of his own.

5. Upon the subject of intoxication as an excuse for crime, the court of its own motion gave the instruction first considered in *People v. Lewis*, 36 Cal. 531, and since then reviewed and approved upon many recurrent occasions. (*People v. Williams*, 43 Cal. 344; *People v. Ferris*, 55 Cal. 588; *People v. Jones*, 63 Cal. 168; *People v. Blake*, 65 Cal. 275; *People v. Franklin*, 70 Cal. 641; *People v. Vincent*, 95 Cal. 425.) A sentence from that instruction is as follows: "Insanity produced by intoxication does not destroy responsibility where the party when sane and responsible made himself voluntarily intoxicated."

At the request of defendant, the court further instructed the jury upon the subject, saying: "The jury is further instructed that, while mere voluntary intoxication is no excuse or justification for the commission of a crime, still insanity, although produced immediately by intoxication, is a defense. Under our code, an insane person is incapable of committing a crime; that is to say, if a man kills another while insane, or his mind is unsound, it is no crime, and this is so whether his insanity is produced or brought on by intoxication, or the use of intoxicating liquors, or by any other cause."

The instructions so given are manifestly contradictory, and calculated to confuse and mislead the jury. Yet the law of the matter is quite simple. No act committed by a person while in a state of voluntary intoxication is less criminal for this reason, saving that when the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any specific species or degree of crime, the circumstance of voluntary intoxication may be considered by the jury in determining the fact whether or not that particular purpose, motive, or intent was present. (Pen. Code, sec. 22.) But a sane person who voluntarily becomes intoxicated is not relieved from responsibility because of any mental derangement, *mania a patu*, or insanity produced by and consequent upon his own voluntary act. Such is the import of the instruction in *People v. Lewis*, *supra*, and it is that form of insanity, if insanity it may be called (for we do not think the word happily chosen), to which the instruction has reference. A sane man, therefore, who voluntarily drinks and becomes intoxicated is not excused because the result is to cloud his judgment, unbalance his reason, impair his per-

ceptions, derange his normal faculties, and lead him to the commission of an act which in his sober senses he would have avoided. Upon the other hand, if one, by reason of long-continued indulgence in intoxicants, has reached that stage of chronic alcoholism where the brain is permanently diseased, where the victim is rendered incapable of distinguishing right from wrong, and where permanent general insanity has resulted, then, and in such case, he is no more legally responsible for his acts than would be the man congenitally insane, or insane from violent injury to the brain. (See *People v. Hubert*, 119 Cal. 216; 63 Am. St. Rep. 72.) Such is the insanity to which the latter instruction doubtless had reference, but there was a failure to emphasize the distinction, with the result, as has been said, of leaving the subject confused and confusing.

6. It was not error for the court to refuse to instruct upon the crime of manslaughter. There is no evidence in the record which could by the most liberal interpretation be held to reduce the crime to that grade, and therefore to justify such a verdict. (*People v. Welch, supra; People v. Turley*, 50 Cal. 469.)

No other alleged errors call for special consideration, but for the foregoing reasons the judgment and order are reversed, and the cause remanded for a new trial.

McFarland, J., Harrison, J., Temple, J., and Beatty, C. J., concurred.