[Crim. No. 590.    Third Appellate District.—March 28, 1922.]

THE PEOPLE, Respondent, v. MICHAEL CRIMMIN, Appellant.

[1] CRIMINAL LAW—MANSLAUGHTER—SANITY OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—In this prosecution for the crime of manslaughter the jury was justified in finding against the defendant's contention that he was insane at the time of the homicide.

[2] ID. — EVIDENCE — UNCONTRADICTED TESTIMONY OF DEFENDANT — CREDIBILITY.—A jury is not bound to accept as true even the uncontradicted testimony of a defendant, especially where the facts are exclusively within his own knowledge and there is no means of disproving the testimony.

[3] ID.—TEMPORARY INSANITY—VOLUNTARY INTOXICATION — INSUFFICIENT JUSTIFICATION.—Insanity or mental derangement immediately produced by voluntary intoxication, and which disappears on the return to soberness, is not a defense to a criminal charge.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

———

3. Drunkenness as a defense to homicide, notes, 36 L. R. A. 479; 13 L. R. A. (N. S.) 1024; 25 L. R. A. (N. S.) 376; 52 L. R. A. (N. S.) 230.

Henry Brickley and Frank E. Murphy for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant appeals from a judgment of conviction of the crime of manslaughter and from the order denying his motion for a new trial.

At about 11:30 A. M. March 18, 1921, the defendant was arrested for drunkenness at Stockton and placed in the "drunk cell" of the county jail with other intoxicated men. At 4:10 P. M. the jailer entered the cell to give the prisoners their meals and found them all asleep. He called them two or three times, but did not succeed in awakening them. At 10:15 that evening one of the prisoners was found dead upon the cell floor, the skull fractured in several places, some of the bones of the face broken, the neck bruised and dislocated, and with blood on the face and hair. The defendant at that time was lying in his bunk. His shoes and pants were bloody. The officer said to him: "That man is dead. Did you do it?" The defendant replied: "I guess I will be tried for murder." One of the witnesses testified that between 8 and 9 o'clock the next morning the defendant said: "I have been drinking very heavy. . . . I have been drinking alcohol." On being asked if he hit the deceased the defendant said: "Yes, I hit him; he annoyed me in my cell, pulling my clothes, and I think I knocked him down. . . . I went back and went to bed, and he came after me again. . . . I got up and hit him again." When asked if he kicked the deceased and why, the defendant replied: "I think so. . . . I think he called me a son-of-a-bitch." Another witness gave substantially the same testimony and stated that the defendant said: "Well, it seems like a dream. . . . I guess I got the delirium tremens."

At the trial the defendant testified that for ten days prior to the homicide he had been "drinking denatured alcohol, lemon extract, Jamaica ginger and wintergreen"; that the night of the homicide he heard voices calling him vile names and threatening to kill him; that he saw a horse which was singing a song called "Casey Jones"; that he saw a cat dancing a jig; that he noticed hands and rats and swarms of red ants; and he related other things which

he imagined he saw and experienced. Basing their answers on defendant's testimony, several physicians testified that in their opinion he was insane at the time of the homicide. From October, 1914, to May, 1915, the defendant was confined in the state hospital at Stockton for insanity produced by intoxication. In 1917 he was in the Merced County hospital a month for alcoholism.

[1] Appellant contends that the evidence shows without substantial conflict that the defendant was insane at the time of the homicide. Enough has already been stated to show that the jury was justified in finding to the contrary. It further appears that the defendant not only gave the officers an account of what occurred, but that he testified at his preliminary examination and was examined by the medical staff of the state hospital. At no time prior to the trial did he mention the hallucinations with which it is now claimed he was afflicted on the night of the tragedy. [2] A jury is not bound to accept as true even the uncontradicted testimony of a defendant, especially where the facts are exclusively within his own knowledge and there is no means of disproving the testimony. His story here is substantially contradicted by his previous statements and the surrounding circumstances.

[3] The court gave an instruction which, as stated by appellant, "is in the language of Mr. Justice Henshaw in the case of *People* v. *Fellows*, 122 Cal. 233 [54 Pac. 830]; cited and approved in *People* v. *Hower*, 151 Cal. 638 [91 Pac. 507]." Appellant says: "As an abstract proposition of law it is undoubtedly correct, but we contend it is inapplicable to the facts in the case at bar." Appellant's contention is based upon his claim that the evidence shows without conflict that the defendant was suffering from delirium tremens, but there was ample evidence to support the inference that he was suffering from drunkenness instead.

The defendant proposed the following instruction and the court gave it as modified by striking out the part inclosed in parentheses:

"It is true that under the laws of this state no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, yet there is a distinction to be made between a state of intoxication and a condition of mind following

such state of intoxication. If at the time of the commission of the alleged homicide the defendant was actually intoxicated such state of intoxication would not justify or excuse him in the commission of the homicide. But if, on the other hand, the state of acute intoxication had ceased and another condition of mind had taken its place and such condition of mind rendered him insane and irresponsible for his acts and conduct then he cannot be held accountable for such acts and conduct. (The question to be determined is whether or not he was intoxicated or insane and if you find that he was insane it matters not how such insanity was produced. Insanity produced by intoxication is just as much insanity as insanity produced by any other cause.)''

The modification was manifestly proper. The part stricken out is subject to the objection discussed in *People* v. *Fellows,* 122 Cal. 233, 239 [54 Pac. 830]. The part stricken out would naturally tend to confuse the jurors and lead them to believe that insanity, or mental derangement, immediately produced by voluntary intoxication and which disappears on the return to soberness, is a defense to a criminal charge. If by the part stricken out it was intended to refer to the insanity mentioned in the preceding sentence, then it states no principle of law not embraced within the instruction as given.

At the request of defendant the court gave an instruction on the subject of temporary insanity which appellant contends is in conflict with that first herein considered. Having held that the first instruction is applicable to the facts and appellant having conceded that it correctly states the law, he cannot complain of any inconsistency between it and an instruction which he himself proposed.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.