## PRICE v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted April 4, 1923. Decided May 7, 1923.)

No. 3862.

1. **Indictment and information ⬤⟿125(6)—Indictment for possessing and uttering counterfeited bill states only one offense.**

An indictment based on Penal Code, § 151 (Comp. St. § 10321), and alleging that defendant had in his possession a counterfeited obligation of the United States, and did then and there, with intent to defraud, utter the same as true and genuine, charges only a single offense.

2. **Criminal law ⬤⟿370—Evidence of defendant's possession of other mutilated bill is competent.**

In a prosecution for passing a United States bill, which had been altered by pasting the numeral 10 over the figure 1, and passing it as a $10 bill with only that corner showing, evidence that on his arrest defendant had in his possession a $5-bill from which one of the figures in the corner had been torn was relevant to the issue of knowledge of the alteration of the bill he was charged with uttering, so as to be competent, though it showed a different offense, there being no objection that the mutilation of the $5 bill was accidental. (Per Robb, Associate Justice.)

3. **Criminal law ⬤⟿370—Evidence of defendant's possession of other mutilated bill held incompetent.**

In a prosecution for uttering a $1 bill over one corner of which the numeral 10 cut from a $10 bill had been pasted, evidence that on defendant's arrest a $5-bill from which the figure 5 in one corner had been torn was found in his possession had no tendency to prove knowledge that the bill he passed had been altered.

4. **Criminal law ⬤⟿1169(11)—Admission of irrelevant evidence of possession of other mutilated bill held harmless.**

Even though possession of another mutilated bill had no tendency to prove defendant's knowledge of the mutilation of a bill which he was charged with passing, its admission in evidence was innocuous, and does not require reversal of the case. (Per Smyth, Chief Justice.)

Van Orsdel, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Robert Price was convicted of uttering with intent to defraud an altered obligation and security of the United States, and he appeals. Affirmed.

James A. O'Shea, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROBB, Associate Justice. Appeal from a judgment upon a verdict of guilty in the Supreme Court of the District under an indictment charging appellant with passing, uttering, and · selling, knowingly and with intent to defraud, an altered obligation and security of the United States.

The evidence was substantially as follows: A Chinaman by the name of Pekin Low testified that he was the proprietor of a Chinese café in the District of Columbia, and had known the defendant for several years; that defendant came into his place for "yakami" (a product of Chinese culinary art), the charge for which was 30 cents, and laid upon the table a bill folded in such a way that the numeral 10 showed. Low, being busy at the time, did not unfold the bill, but gave defendant $9.70 in change. Thereafter, upon opening the bill, it was discovered that it was a $1 bill with a numeral 10 torn from a $10 bill, pasted on one corner over the numeral 1. This bill was introduced in evidence.

Sadie Napper, who worked for Low at the time, testified that she knew the defendant and was present when he came to the café on the occasion in question; that she executed the order he gave and saw him put the bill on the table; that Low put the change on the table and that she handed it to the defendant.

Thereupon the government called a police officer by the name of Lawsen, who, "over the objection and exception of the defendant," testified that, when he arrested the defendant on the day in question, he found in his pocket a roll of several bills of different denominations. Among these bills was "a $5 bill with one of the 5's torn out of one of the corners," and "thereupon, over the objection and exception of the defendant, the bill was offered in evidence." Another police officer testified to the same effect, subject to the same "objection and exception." He also testified that, when arrested, the defendant, upon being shown the altered bill, denied he ever had seen it. The government then rested, and no evidence was offered by the defendant.

[1] The first contention of the defendant is based upon a motion made at the trial that the government be required to elect between the averments of the count upon which he was convicted, it being defendant's theory that this count sets forth two separate and distinct offenses. The count is based upon section 151 of the Penal Code (Comp. St. § 10321), and charges, in effect, that the defendant "did have in his possession the said falsely made, forged, counterfeited, and altered obligation and security of the said United States" heretofore mentioned, and "did then and there, with intent to defraud, feloniously and knowingly pass, utter, publish, and sell the same as true and genuine to one Pekin Low," etc. It is apparent that there was charged but a single offense, that of passing, knowingly and with intent to defraud, a forged and altered security of the United States.

[2] The sole remaining question necessary to be considered is whether the court committed error in permitting the introduction in evidence of the $5 bill and the testimony concerning it; one of the corners of the bill containing a numeral 5 having been torn out. The general rule is that, upon a trial for one offense, evidence of other and wholly un-

connected offenses may not be received. But this rule is subject to certain qualifications and exceptions, to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused in the case on trial may be made to appear. People v. Ebanks, 117 Cal. 652, 49 Pac. 1049, 40 L. R. A. 269; People v. Jennings, 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N. S.) 1206; Com. v. Snell, 189 Mass. 12, 75 N. E. 75, 3 L. R. A. (N. S.) 1019; State v. Hyde, 234 Mo. 200, 136 S. W. 316, Ann. Cas. 1912D, 191; People v. Rogers, 192 N. Y. 331, 85 N. E. 135, 15 Ann. Cas. 177; 8 R. C. L. p. 198. The test is the relevancy of the evidence to the purpose for which its introduction is sought. In other words, the evidence as to these collateral acts must be of such a nature as to warrant the inference that there is a natural connection between the two transactions. Thus in Holmes v. Goldsmith, 147 U. S. 150, 164, 13 Sup. Ct. 288, 37 L. Ed. 118, and in Williamson v. United States, 207 U. S. 425, 451, 28 Sup. Ct. 163, 52 L. Ed. 278, the court quoted with approval from the decision in Stevenson v. Stewart, 11 Pa. 307, as follows:

"The competency of a collateral fact, to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth."

In the Holmes Case the court said:

"The modern tendency, both of legislation and of the decisions of courts, is to give as wide a scope as possible to the investigation of facts."

This language was repeated in the Stevenson Case.

The defendant in this case professed ignorance as to the altered bill in question, so that it was highly essential to prove guilty knowledge. In a trial for receiving stolen or embezzled property, evidence of the receipt of other embezzled or stolen property of the same kind is competent to show guilty knowledge. Gassenheimer v. U. S., 26 App. D. C. 432; State v. Kelley, 65 Vt. 531, 27 Atl. 203, 36 Am. St. Rep. 884. And in Com. v. Coe, 115 Mass. 481, where the defendant was on trial for cheating by false pretenses, evidence of his possession and use of other forged certificates of stock at or about the same time was held admissible to prove guilty knowledge. The court said:

"Evidence of the possession and use of other altered and false certificates by the defendant, about the same time, whether before or afterwards, was competent to show that his possession of those, for the use of which he was indicted, was not casual and accidental."

In the present case the numeral 10 had been torn out of a genuine bill and pasted over the $1 bill in evidence. The $5 bill found upon the defendant on the same day that he passed the altered bill had been mutilated by the tearing out from one of the corners of the numeral 5. Both bills were before the jury, and if the $5 bill bore evidence of having been recently mutilated—that is, if the tear was fresh and of such a character as to indicate willful mutilation rather than an accidental tear—how may it be said, in the absence of any explanation

or evidence to the contrary, that there was no possible connection between the two occurrences? If the jury believed that the defendant was responsible for the mutilation of this $5 bill, would they not be justified in inferring that he was engaged in a criminal scheme, and that his passing of the bill in question was a part of it?

The evidence tended to prove that the $5 bill had been mutilated in the same manner and to the same extent as had the $10 bill from which the numeral ten had been obtained. It is apparent that the obtaining of that numeral was necessary to enable the defendant to alter and pass the $1 bill as and for a $10 bill. If, after inspecting the two bills, the jury became satisfied that the mutilation of the $5 bill must have been intentional, that conclusion, in the light of the surrounding facts and circumstances, warranted the inference that the possession by the defendant of the mutilated $5 bill was more than a coincidence; in other words, that the defendant not only had mutilated the bill, but that his purpose was similar to that charged against him with respect to the other bill.

It may be objected that the evidence did not show that the mutilation of the $5 bill was recent, but the answer to this objection is obvious. If an inspection of that bill disclosed that it was an old bill, and that the mutilation was of such a character as to result from wear, no possible prejudice could have resulted to the defendant. See People v. Altman, 147 N. Y. 473, 42 N. E. 180. It will be observed that there was no contention in the trial court on the part of defendant's counsel as to the character of the mutilation of the $5 bill; that is, as to whether an inspection of the bill indicated an apparently remote or a recent tear. We may assume that, had the bill been an old one, and the mutilation seemingly the result of wear, and not of design, counsel for defendant would not have been content with a mere general objection as to its admissibility.

The judgment must be affirmed.

Affirmed.

SMYTH, Chief Justice (concurring specially). [3, 4] I do not think that the $5 bill had any tendency whatever to prove that the defendant knew the bill which he passed on Low had been altered, and that was the only question in the case; but its reception in evidence was, in my opinion, entirely innocuous, and therefore I concur in the judgment of affirmance.

VAN ORSDEL, Associate Justice (dissenting). I dissent from the opinion and judgment of the court. There was nothing to show that the $5 bill found on defendant, two days after he was charged with passing the altered $1 bill (not the same day, as stated in the opinion of the court), was mutilated by him, or that the corner torn from the bill could have been used to raise or alter another bill, in a manner similar to that employed in altering the $1 bill. Nor was the condition of the bill shown, whether it was an old, worn bill, that might have become mutilated by wear, or a comparatively new one, from which the

corner had been freshly torn. The torn corner was not found in the possession of defendant, nor was there any other bill found to which it had been attached. These were facts which it was incumbent upon the government to prove, in order to give this piece of evidence even the semblance of competency. They should not be left to the inference or speculation of the jury.

This case has no analogy to cases where evidence of one offense may be introduced in the trial of a defendant for a different offense, where the offenses are so connected that the one tends to establish the constituent elements of the crime of which the defendant is accused. The possession of the mutilated $5 bill by defendant was not a crime. It was a mere circumstance that might occur to any one having money in his possession. Until there is some further evidence to establish criminal intent, on the part of the defendant, to use the torn section from the $5 bill for the raising or altering of another bill, in a manner similar to the offense charged, there could be no such connection as to render the mutilated bill competent evidence in this case. Nor was it admissible as tending to establish guilty knowledge on the part of the defendant. As this court held in Gassenheimer v. United States, 26 App. D. C. 432, 443:

"Proof of guilty knowledge at the time of the receipt of the property of which one is accused cannot be supplied or aided by proof of the receipt or possession of other like property not shown to have been embezzled also. Gassenheimer v. State, 52 Ala. 313, 318; State v. Saunders, 68 Iowa, 370, 27 N. W. 455; State v. Prins, 113 Iowa, 72, 75, 84 N. W. 980; Harwell v. State, 22 Tex. App. 251, 253, 2 S. W. 606."

Cases where a defendant is charged with forgery and similar forged instruments are found in his possession, or the charge is passing counterfeit money and similar counterfeit money is found in defendant's possession, or cases where a defendant is charged with the commission of a crime, and evidence is offered showing that under similar circumstances he has committed a similar offense, have no analogy to this case. Since the possession of the mutilated $5 bill was not a crime, implied no criminal knowledge or intent on the part of the defendant, but constituted a mere circumstance which, as suggested, might occur with any person having money in his possession, it was clearly inadmissible.

While I concur with the Chief Justice that the mutilated $5 bill was not admissible as evidence in this case, I cannot agree that it was merely error without prejudice. In Gassenheimer v. State, 52 Ala. 318, where the appellants were indicted and convicted of receiving a sack of cotton, knowing it to have been stolen, evidence was introduced to the effect that other sacks of cotton had been taken to the defendant's place during the nighttime. The court, holding this evidence inadmissible and highly prejudicial, said:

"The evidence doubtless alarmed the suspicions of the jury, and inclined them the more readily to believe in the guilt of the defendants, and the less inclined to listen to whatever was offered or said in their defence; but no legitimate inference of knowledge that this particular cotton had been stolen could be based on it. It was not shown the cotton carried there on other nights had been stolen; and must the jury leap to the con-

clusion it had been, and, having made the leap, take the further, that, because that had been stolen, the defendants must have known this cotton also was stolen? Rumors and suspicions may be born of such facts, and depend on such inferences; but not the verdict of a jury, which is to stamp dishonor and guilt on the citizen. This must rest on a more substantial basis. The law of the land has a higher logic and humanity than to found its judgments on such facts, and the vague inferences which unreasoning suspicion would draw from them."

It seems to me impossible, in the light of every rule and principle of law and justice, to hold that defendant was not prejudiced by the admission in evidence of the mutilated bill.

"The rule that an error committed upon a trial may be overlooked when the party complaining was not prejudiced thereby is only applicable in cases where the error could by no possibility have produced injury." People v. Altman, 147 N. Y. 473, 42 N. E. 180.

It seems to me incredible that the inspection of this incompetent piece of evidence by the jury, and the stress undoubtedly laid upon it in argument by counsel for the government, "could by no possibility have produced injury."

For these reasons, I am impelled to hold that the judgment should be reversed, and a new trial granted.