[No. 20750. In Bank. — March 5, 1891.]

# THE PEOPLE, RESPONDENT, v. WILLIAM TRAVERS, APPELLANT.

CRIMINAL LAW — GRAND JURY — CHALLENGE AFTER DISCHARGE. — After a grand jury has been discharged, a defendant against whom an indictment has been found cannot have the jurors reassembled in court, formerly challenged, and examined on their *voir dire*, on the ground that the jury was not in session when he was held to answer, and that he had no opportunity to challenge the jurors.

ID. — GROUND OF CHALLENGE — SETTING ASIDE INDICTMENT — PROOF OF GROUND. — A defendant indicted without an opportunity to challenge the grand jury may have the indictment set aside on any ground which would have been good ground for challenge, either to the panel or to any individual juror; but the fact which would have been good ground for challenge must be proven in the same way as other facts, either by the examination of the jurors as witnesses under subpœna, or by other competent evidence.

ID. — CONTINUANCE. — For the purpose of producing evidence to sustain a motion to set aside the indictment upon a good ground for challenge to the grand jury, the defendant is entitled to a continuance upon a proper showing, but not in the absence of such showing.

ID. — HOMICIDE — INSTRUCTION — CONVICTION OF INNOCENT PERSONS. — An instruction to the jury, upon the trial of a defendant for murder, to the effect that "while it is true that innocent persons have been convicted in the past, there is no proof in this case of any such fact," and that the jury "are not justified in considering such matters in determining the guilt or innocence" of the defendant, which must be determined "from the evidence admitted in the case, and not from sympathy or prejudice," and that "if all criminals must go free because there is a possibility of making mistakes, society might as well disband," is erroneous, and objectionable, as indicating hostility to the defendant, and invading the province of the jury.

ID. — REASONABLE DOUBT. — The jury have a right to consider that innocent men have been convicted, and to consider the danger of convicting an innocent man, in weighing the evidence to determine whether there is a reasonable doubt as to the defendant's guilt.

ID. — DEFENSE OF INSANITY — PRESUMPTION — BURDEN OF PROOF — PREPONDERANCE OF EVIDENCE. — A person is presumed to be sane until the contrary is shown, and the burden is upon a defendant relying upon it as a defense to show his insanity by a preponderance of evidence.

ID. — REASONABLE DOUBT. — The rule that it is sufficient to raise a reasonable doubt as to the defendant's guilt does not apply to the defense of insanity.

ID. — INSANITY PRODUCED BY INTOXICATION. — Insanity produced by long-continued intoxication affects responsibility in the same way as insanity produced by any other cause; but to constitute a good defense to an indictment for murder, it must be settled insanity, and not merely a temporary mental condition produced by recent use of intoxicating liquor.

APPEAL from a judgment of the Superior Court of Nevada County.

The facts are stated in the opinion of the court.

*Thomas S. Ford*, for Appellant.

*Attorney-General Johnson*, for Respondent.

McFARLAND, J. — The appellant was convicted of murder, and appeals from the judgment on the judgment roll, and a short bill of exceptions which shows certain proceedings had on a motion to set aside the indictment.

1. Appellant, upon his arraignment, moved to set aside the indictment, upon the ground that he had not been held to answer when the grand jury which indicted him was in session, and that the grand jurors were prejudiced against him, and had unqualified opinions that he was guilty. He introduced on the motion an affidavit made by the county clerk and one made by himself, which showed that he had not been held to answer when he was indicted, and had no opportunity to challenge the grand jury. No other evidence was introduced. The bill of exceptions states that "defendant then offered to leave the challenge to the said grand jurors who indicted him to prove *the challenge* good, and moved the court for reasonable time and opportunity to examine each juror on his *voir dire* in support of said *challenge.* The court overruled said motion *and challenge,* and defendant excepted." The first part of the language above quoted is obscure. It probably was intended to state that defendant moved for leave to challenge the grand jurors, and thus "prove the challenge good." At all events, the idea of appellant seems to have been that he had the right to have the discharged grand jurors reassembled in court, and to proceed to challenge them formally, and to examine them on their

*voir dire,* just as he might have done before the indictment was found. But this is evidently a mistaken notion of the law. A challenge to a grand juror is a preliminary objection to the qualification of the juror, and its purpose is to prohibit the juror from sitting and inquiring into the charge against the party interposing the challenge; and if the challenge be allowed, the juror " cannot be present or take part in the consideration of the charge against the defendant who interposed the challenge, or the deliberation of the grand jury thereon." (Pen. Code, sec. 900.) It is clear that after a grand jury has completed its work and been discharged, the conditions which make a challenge possible no longer exist. But a defendant who has been indicted without an opportunity to challenge the grand jury is not without remedy. Section 995 of the Penal Code provides that an indictment may be set aside "when the defendant has not been held to answer, before the finding of the indictment, on any ground which *would have been* good ground for challenge, either to the panel or to any individual grand juror." This language clearly contemplates that the time for challenges has passed, and provides that a defendant may still prove any fact which "would have been good ground for challenge" if he had had an opportunity to interpose it at a time when a challenge was possible. But the fact which would have been good ground for challenge must be proven in the ordinary way in which other facts are proven, by the introduction of evidence, either by the examination of the jurors, or by *other* competent evidence. For this purpose, of course, defendant is entitled to the process of subpœna to compel the attendance of his witnesses; but there is no process by which discharged grand jurors can be reassembled in their official character, and subjected to the original process of challenging. For the purpose of producing this evidence, a defendant would, no doubt, upon a proper showing, be entitled to a con-

tinuance; but in the case at bar there was no such show-
ing. The appellant did not make any affidavit of merits
or diligence; nor did he, by affidavit or otherwise, show
that he could produce a single item of evidence tending
to show the disqualification of any grand juror. Indeed,
he did not make a regular motion for continuance, but
seemed to rely upon the supposed right to have the court
reassemble the jury.

In *People* v. *Beatty,* 14 Cal. 567, relied on by appellant
on this point, the only question was, whether a grand
jury could indict at all for a crime committed during
their session, and after they had been impaneled; and
the remark of the justice who delivered the opinion about
the right of challenge upon arraignment was evidently
mere *dictum,* used in the progress of his reasoning, and
was not intended as the grave determination of a ques-
tion not before him. There is nothing in the other two
cases cited (*People* v. *Turner,* 39 Cal. 376, and *People* v.
*Geiger,* 49 Cal. 650) which determines anything adversely
to the views above stated. We therefore think that the
court below did not commit any error in the matter of
the motion to set aside the indictment.

2. The other points made by appellant relate to in-
structions given to the jury, and the first one objected
to is as follows:—

"*Fourth.* During the argument of this case, your
attention has been called to a number of cases in which
it was claimed that juries had improperly convicted the
defendants. While it is true that innocent persons have
been convicted in the past, there is no proof in this case
of any such fact, *and you are not justified in considering*
such matters in determining the guilt or innocence of
this defendant; the guilt or innocence of this defend-
ant must be determined from the evidence admitted in
the case, and not from sympathy or prejudice. If all
criminals must go free because there is a possibility of
jurors making mistakes, society might as well disband."

This instruction was clearly erroneous. In the first place, it is objectionable—although perhaps not fatally so—on account of its apparent hostility to the defendant. The jury would be very apt to get the impression from it that the court considered the defendant as one of the "criminals" alluded to, and feared that the jury would fail to convict him on account of "sympathy or prejudice." In the second place, it is objectionable as an argument in favor of the prosecution on the weight of evidence, and thus was an invasion of the province of the jury; for "to weigh the evidence and find the facts is in this state the exclusive province of the jury; and with the peformance of that duty the judge cannot interfere without a palpable violation of the organic law." (*People* v. *Dick*, 34 Cal. 666; *People* v. *Fong Ching*, 78 Cal. 173.) In the third place, if it can be considered as a direction about law, and not an argument about facts, it is still clearly erroneous. It was probably founded on *People* v. *Cronin*, 34 Cal. 191; but the instruction which was approved in that case, although itself somewhat extreme, was far different from the one given in the case at bar. In the Cronin case, the court, in its instruction on this point, after stating the fact that counsel for defendant had—as in the case at bar—alluded to cases where upon circumstantial evidence innocent men had been convicted, told the jury, among other things, that "the quotation of such cases *is proper, in order to make the jury careful* in arriving at a proper conclusion from such (circumstantial) evidence." But in the case at bar the court told the jury "you are not justified *in considering* such matters." But the jury had *the right to consider* that innocent men had been convicted; for the difference in the weight of evidence required in civil and criminal cases, and the doctrine of reasonable doubt itself, are founded upon the danger of destroying life or liberty upon evidence that does not produce thorough conviction, and that danger is based, in great part, upon human experience.

The court seemed to think that the fact of former unjust convictions could not be considered, because "there is no proof in this case of any such fact"; but that such cases have occurred is a matter of common knowledge, which the court itself admitted when it said: "It is true that innocent persons have been convicted in the past." If the court had simply told the jury that if they were satisfied, beyond a reasonable doubt, by the evidence before them, that the defendant was guilty, they should not be deferred from so finding merely because there had been some innocent men convicted, the instruction might not have been objectionable; but to tell them that in coming to their conclusion they should not consider the danger of convicting an innocent man was clearly erroneous. And it certainly does not appear that the whole instruction was not prejudicial to appellant. We think, therefore, that for the giving of this instruction the judgment should be reversed. (It may be remarked that the propriety of counsel reading to a jury from law books is not here involved. It does not appear whether that was done, or whether counsel merely alluded to the subject orally; but if there was such reading, it occurred without objection.)

As the case must be retried, it is necessary to notice one or two other matters.

3. In the instructions given upon the subject of insanity, there was no error prejudicial to appellant. They are somewhat voluminous; but the main proposition contained in them was, that a person is presumed to be sane until the contrary is shown, and that the burden is on a defendant of showing insanity, by a preponderance of evidence. This rule has been established in this state by a long line of authorities. (*People* v. *Myers*, 20 Cal. 518; *People* v. *Coffman*, 24 Cal. 237; *People* v. *McDonnell*, 47 Cal. 134; *People* v. *Wilson*, 49 Cal. 13; *People* v. *Messersmith*, 61 Cal. 246; *People* v. *Hamilton*, 62 Cal. 377; *People* v. *Kernaghan*, 72 Cal. 609; *People* v. *Eubanks*, 86

Cal. 295.)  And this long line of decisions cannot be held to have been overruled by *People* v. *Bushton,* 80 Cal. 160, where the defense was accident, and *People* v. *Elliott,* 80 Cal. 296, where the defense was self-defense.  In those cases the court was dealing entirely with those "circumstances," referred to in section 1105 of the Penal Code, which mitigate or justify or excuse an act done by a sane man who might commit a crime; and its attention was not called in any way to that unusual and peculiar mental condition called "insanity" which renders a man utterly incapable of committing crime at all.  In the opinion of the court in *People* v. *Bushton,* 80 Cal. 160, reference is made to *People* v. *Smith,* 59 Cal. 607, and *People* v. *Flanagan,* 60 Cal. 3, 44 Am. Rep. 52; in which the very doctrine of the Bushton case was stated; but in those cases — where the defenses were self-defense and defense of property — the court certainly did not intend to overthrow the settled rule of the court on the subject of insanity.  We are clear, therefore, that the undisturbed law of this state still is, that the burden of showing insanity is upon a defendant who seeks shelter under it as a defense.

In an instruction asked by defendant, and given, there occurs these words: "Or if you have a reasonable doubt as to his sanity, you cannot convict him of any degree of crime, but should acquit him."  This, of course, is conflicting with the other instructions on the subject of insanity; but as it was favorable to defendant, the conflict would not, of itself, be good for reversal.  At another trial this conflict can be avoided.

4.  We see no error in the instructions given on the subject of intoxication.  As to the instructions asked by appellant on the subject of *delirium tremens,* etc., it is sufficient to say that settled insanity produced by a long-continued intoxication affects responsibility in the same way as insanity produced by any other cause.  But it must be "settled insanity," and not merely a temporary

mental condition produced by recent use of intoxicating liquor. And an instruction to that effect should be given on another trial if asked, provided there be evidence to which such an instruction would apply. There are no other points necessary to be noticed.

It may be remarked, in conclusion, that in nearly every instance where this court has solved a doubtful proposition in favor of the affirmance of the judgment, the decision has been made the basis and pretext for further excursions in the same direction into the realm of unquestionable error.

The judgment is reversed, and the cause remanded for a new trial.

DE HAVEN, J., SHARPSTEIN, J., BEATTY, C. J., and HARRISON, J., concurred.

GAROUTTE, J., dissenting. — The practical administration of justice should not be defeated by a too rigid adherence to a close and technical analysis of the instructions of the lower court. And conceding this instruction to be obnoxious to criticism, of which fact I have some doubt, yet its weaknesses form too slight a basis for a reversal of the judgment in this case.

I do not believe that the fact of innocent men having been convicted in the past was a matter to be considered by the jury in making up their minds as to the guilt or innocence of this defendant. Such fact could not add to or take away one jot from the weight to be given every piece of evidence in the case. It was the duty of the jury to be convinced, beyond a reasonable doubt, from all the *evidence* in the case, of the guilt of the defendant, before they could convict, and the fact of innocent men having been convicted in the past should not and could not have impregnated itself into the question of reasonable doubt in any way.

The jurors in this case, under their oaths, were bound to try this defendant in the same manner, under the

same rules of law, and give him the full benefit of all
the shields with which the law surrounds every defend-
ant, whether as a matter of fact no innocent men ever
had been convicted in the past, or whether such convic-
tions by our courts of justice were an ordinary occur-
rence.

I see nothing in the instruction to indicate hostility
toward the defendant. The words "sympathy" and
"prejudice," as used, applied equally as strong in his
favor as against him. If all "defendants" must go free,
I consider would have been a more appropriate expres-
sion than if all "criminals" must go free; yet I do not
think a jury would get the impression, and am sure that
it ought not to get the impression, that by the use of
the word "criminals," as used in the instruction, the
court intended to refer to the defendant as one of that
class.

I think the judgment should be affirmed.