[Crim. No. 316.   Second Appellate District.—April 10, 1914.]

# THE PEOPLE, Respondent, v. WILLIAM BREMER, Appellant.

CRIMINAL LAW—INSANITY FROM USE OF INTOXICANTS—PRESUMPTION OF CONTINUANCE.—Where the existence of general insanity is established, it will be presumed to continue; but this rule does not apply to that form of insanity known as delirium tremens brought on by one's own procurement and passing away with the removal of the exciting cause.

ID.—HOMICIDE—DELIRIUM TREMENS AS DEFENSE—ADMISSIBILITY OF EVIDENCE.—Hence in a prosecution for murder the defendant, who claims that the homicide was committed while he was suffering from *mania a potu,* cannot introduce expert testimony of the symptoms of such mania, nor testimony of prior attacks of delirium tremens, the last one having been a night or two before the crime.

ID.—VOLUNTARY INTOXICATION—EFFECT ON RESPONSIBILITY FOR CRIME. A sane person who voluntarily becomes intoxicated is not relieved from responsibility because of any mental derangement, *mania a potu,* or insanity produced by and consequent upon his own voluntary act. Settled insanity produced by long continued intoxication affects responsibility in the same way as insanity produced by any other cause, but it must be settled insanity, not merely a temporary mental condition produced by recent use of intoxicating liquor.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial.   T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Shreve & Shreve, and J. T. Reed, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendant was convicted of murder in the first degree and, upon recommendation of the jury, his punishment fixed at imprisonment for life.   He appeals from the judgment and from an order of court denying his motion for a new trial.

One of the defenses interposed by defendant was that at the time of the homicide he was suffering from that form of insanity known as *mania a potu.* The homicide occurred at about 6 o'clock in the evening of August 27, 1913. Defendant testified that for years he had indulged in the use of alcoholic liquors; that sometimes he would go for months without drinking and then get intoxicated. He was then asked whether he had ever had delirium tremens, whether after he had been drinking he was possessed of the belief that he saw snakes or animals; followed by other questions whereby it was sought to show that on one occasion some twelve years before the homicide, and on another occasion one or two years prior thereto, and again on the night before the killing of deceased, he suffered from certain designated hallucinations, delusions, and illusions, such as usually manifest themselves in cases of *mania a potu.* Defendant then made an offer to prove by the witness the facts sought to be elicited by the questions, and that a night or two before the homicide, after defendant had been drinking more or less for a month, he awakened and imagined he saw near his bed a monster or dragon, which vanished, returned, and disappeared. To all of these questions and offer an objection that the same were incompetent, irrelevant, and immaterial was sustained. These rulings are assigned as error.

When the existence of general insanity is established it is presumed to continue. This presumption, however, does not apply to that form of the disease known as delirium tremens brought on by one's own procurement and passing away with the removal of the exciting cause. (*State* v. *Potts,* 100 N. C. 457, [6 S. E. 657]; *Goodwin* v. *State,* 96 Ind. 551.) Hence, since there is no presumption of its continuance or recurrence, the fact that during a period of twelve years defendant had had attacks of delirium tremens, the last one "a night or two before the killing," would not tend to prove "the existence of a paroxysm of the disorder . . . at the very time of the act" with the commission of which he was charged. (Clevenger on Medical Jurisprudence, vol. II, p. 780.) For this reason we are constrained to hold that the evidence sought to be elicited, if *otherwise competent,* was wholly immaterial. Moreover, defendant's normal condition was that of a sane man. His alleged mental derangement was not

only transient in character, but such condition was the result of his voluntary acts in the use of alcoholic liquors. Under such circumstances, one prosecuted for the commission of a crime cannot urge such condition as a defense thereto. In *People* v. *Fellows,* 122 Cal. 233, [54 Pac. 830], the supreme court, in discussing a like question, said: "No act committed by a person while in a state of voluntary intoxication is less criminal for this reason, saving that when the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any specific species or degree of crime, the circumstance of voluntary intoxication may be considered by the jury in determining the fact whether or not that particular purpose, motive, or intent was present. (Pen. Code, sec. 22.) But a sane person who voluntarily becomes intoxicated is not relieved from responsibility because of any mental derangement, *mania a potu,* or insanity produced by and consequent upon his own voluntary act. Such is the import of the instruction in *People* v. *Lewis,* 36 Cal. 531, and it is that form of insanity, if insanity it may be called (for we do not think the word happily chosen), to which the instruction has reference. A sane man, therefore, who voluntarily drinks and becomes intoxicated is not excused because the result is to cloud his judgment, unbalance his reason, impair his perceptions, derange his normal faculties, and lead him to the commission of an act which in his sober senses he would have avoided. Upon the other hand, if one, by reason of long-continued indulgence in intoxicants, has reached that stage of chronic alcoholism where the brain is permanently diseased, where the victim is rendered incapable of distinguishing right from wrong, and where permanent general insanity has resulted, then, and in such case, he is no more legally responsible for his acts than would be the man congenitally insane, or insane from violent injury to the brain." This language was quoted with approval in *People* v. *Hower,* 151 Cal. 643, [91 Pac. 507].

What is said upon this point is equally applicable to the ruling of the court in excluding expert testimony as to the symptoms or manner in which *mania a potu* manifests itself. It follows that no error was committed by the court in excluding the evidence.

The court instructed the jury that, "Settled insanity produced by long-continued intoxication affects responsibility in the same way as insanity produced by any other cause, but it must be settled insanity, and not merely a temporary mental condition produced by recent use of intoxicating liquor." Authority for this instruction is found in *People* v. *Travers,* 88 Cal. 233, [26 Pac. 88], and the principle there enunciated reiterated with approval in *People* v. *Hower,* 151 Cal. 643, [91 Pac. 507]. Appellant, in support of his attack upon the instruction, cites *People* v. *Ford,* 138 Cal. 141, [70 Pac. 1075], where the court said: "Temporary insanity as a defense to crime is as fully recognized by law as is permanent insanity." What was there said, however, had no reference to that form of so-called insanity designated *mania a potu,* where, as stated, the condition is due to the voluntary act of the party.

The defendant requested twenty-six instructions, ten of which were by the court given as requested, and sixteen assignments of error are predicated upon the rulings of the court in refusing to give the remainder of those requested. As to nearly all of these assignments, no argument is made in support of the alleged erroneous rulings, appellant contenting himself merely by setting out *in haec verba* the instructions refused. A careful examination of the record discloses that the charge of the court, when taken in connection with the instructions given at the request of defendant, fully and fairly covered every phase of the case presented and embodied a correct statement of the law applicable thereto, save in one or two minor matters which in no event could have been prejudicial to the rights of defendant.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James, J., concurred.