.[Crim. No. 350.   Third Appellate District.—September 14, 1916.]

## THE PEOPLE, Respondent, v. FRANK GOODRUM, Appellant.

CRIMINAL LAW—ASSAULT TO MURDER—INSANITY FROM USE OF ALCOHOLIC LIQUORS—REFUSAL OF INSTRUCTION ON LAW OF SETTLED INSANITY — PREJUDICIAL ERROR.—In a prosecution for the crime of assault to commit murder, it is prejudicial error to refuse an instruction proposed by the defendant on the law of insanity brought on by the use of intoxicating liquors that will excuse a criminal act, where it was expressly admitted by the people that the defendant was not intoxicated at the time of the assault, and there was evidence introduced which would support the theory that the alleged insanity of the defendant was the effect of long-continued intoxication prior to the commission of the crime.

ID.—CHARACTER OF MENTAL DERANGEMENT—ERRONEOUS INSTRUCTION—QUESTIONS OF FACT.—The reading to the jury, as a part of the instructions in the case, of the following language taken from a recent decision of the appellate court, to wit: "Defendant's normal condition was that of a sane man. His alleged mental derangement was not only transient in character, but such condition was the result of his voluntary acts in the use of alcoholic liquors. Under such circumstances, one prosecuted for the commission of a crime cannot urge such condition as a defense thereto,"—is prejudicial error, as the question whether the defendant's mental derangement was only of a transient character, and his condition the result of his voluntary acts in the use of alcoholic liquors, was a question solely and exclusively for the jury.

ID.—TEMPORARY AND SETTLED INSANITY—USE OF INTOXICANTS.—There is a well-recognized distinction in law between temporary insanity

or mental aberration brought on by voluntary intoxication and "settled insanity" superinduced by long-continued indulgence in alcoholic liquors. A sane person who voluntarily drinks and becomes intoxicated is not excused; but if one, by reason of long-continued indulgence in intoxicants has reached the stage of chronic alcoholism where the brain is permanently diseased and where permanent general insanity has resulted, he is not legally responsible for his acts.

ID.—TEMPORARY DERANGEMENT FROM USE OF INTOXICANTS—EVIDENCE—MOTIVE OR INTENT.—Mere temporary mental derangement resulting from the use of intoxicants, whether it manifests itself in the form of *delirium tremens* or in some milder form, cannot operate to absolve a person from liability for a criminal act, and testimony disclosing that precise mental state at the time the criminal act was committed is admissible only where the existence of a particular purpose, motive, or intent is a necessary element of the crime charged, and then it may be considered by the jury, not as the predicate for the full exoneration of the accused, but solely to enable or assist them in determining the purpose, motive, or intent with which he committed the act.

ID.—SCOPE OF DEFENSE—OPENING ADDRESS OF COUNSEL.—A defendant in a criminal case, in making a defense and proving his case, is not necessarily required to remain strictly within the literal scope of the defense outlined by his counsel in his opening address to the jury.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

J. M. Lee, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Under an indictment charging him with the crime of assault to commit murder, the defendant was convicted of the crime of assault with a deadly weapon, and was sentenced to imprisonment in the state prison for the term of eighteen months. This appeal is prosecuted by the defendant from the judgment and the order denying him a new trial.

The assault was committed on the wife of the defendant, in the city of Red Bluff, on the twentieth day of December, 1915.

Domestic dissensions had led to the separation of the parties, and for some little time prior to the date of the assault the defendant had not lived with his wife.

The undisputed facts are: That on the said twentieth day of December, between the hours of 5 and 6 o'clock P. M., Mrs. Goodrum and her mother, Mrs. Harriet B. Reyon, who was then stopping at the home of the former, were on their way home from the business part of the city, when they were approached from the rear by the defendant. He placed his hand upon the shoulder of his wife and, addressing her, said: "Belle, I want to speak to you a minute." Both Mrs. Goodrum and Mrs. Reyon turned and faced him, and at the same time the defendant drew a revolver and pointed it in the face of his wife. Mrs. Reyon grabbed the weapon, a tussle ensued, and the weapon was discharged, no one, however, being struck by the bullet. Thereupon the defendant drew a knife and began cutting and slashing his wife about the head and left arm. Several ugly, though not serious, wounds were thus inflicted upon the head, left arm, and hand of Mrs. Goodrum. Mrs. Reyon called loudly for assistance, and finally the defendant desisted from his attack and stepped away a distance of twelve or fifteen feet and threatened and apparently attempted to commit suicide.

Mrs. Goodrum was taken to a drug-store near by, where she received the attention of a physician, and the defendant was placed under arrest, taken to the county jail, and subsequently, on account of a gash across his throat, inflicted by a knife, presumably by himself, and weakness resulting from said wound, was conveyed to the county hospital, where he remained for several weeks.

The defense interposed at the trial was that of insanity, and testimony was introduced to support it, a number of "intimate acquaintances" testifying that in their opinion the defendant was insane on the day upon which the assault was committed. And the defendant himself testified that he had no recollection of the assault or of any incidents connected with himself occurring on that day.

The complaint against the result reached by the jury is based solely upon certain instructions given by the court upon the issue of insanity and also upon the action of the court in rejecting certain instructions proposed by the defendant upon that question.

While it was expressly admitted in court by the district attorney that the defendant was not under the influence of intoxicating liquor at the time of the assault, it was the theory of the people at the trial that if the defendant's mentality was not wholly normal or was, to the extent of rendering him irresponsible, impaired on that occasion, such condition of mind was occasioned wholly by the use by him of intoxicating liquors for some period of time prior to the assault. And, in harmony with this theory, the court instructed the jury, basing its instructions upon that question upon section 22 of the Penal Code, which reads as follows: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

The court correctly instructed the jury, in accordance with the provisions of the foregoing section, that temporary insanity produced by the voluntary use of intoxicating liquor is no excuse for the commission of crime. It is claimed, however, that, since it was admitted that the defendant was not in an intoxicated condition on the day that the assault was committed, there was, under the proofs, ample room for the theory that the alleged insanity of the accused was not of a temporary character as the result of his voluntary intoxication, but the effect of long-continued intoxication for a period prior to the time of the commission of the act, and was, within the meaning of the law, "settled insanity"; that the court should have instructed upon that theory, and erred to the prejudice of the defendant by refusing to do so.

In view of the fact that there was some testimony tending to show that the accused had, previously to the day of the difficulty, habitually imbibed intoxicating liquors to excess, and of the further fact that the people admitted that the defendant was not in a state of intoxication on the day of the assault, we think there is some force to this contention.

There is a well-recognized distinction in law between temporary insanity or mental aberration brought on by voluntary intoxication and "settled insanity" superinduced by

long-continued indulgence in alcoholic liquors.  ''A sane man
who voluntarily drinks and becomes intoxicated is not ex-
cused because the result is to cloud his judgment, unbalance
his reason, impair his perceptions, derange his mental facul-
ties, and lead him to the commission of an act which in his
sober senses he would have avoided.  Upon the other hand,
if one, by reason of long-continued indulgence in intoxicants,
has reached the stage of chronic alcoholism where the brain
is permanently diseased, where the victim is rendered in-
capable of distinguishing right from wrong, and where per-
manent general insanity has resulted, then, and in such case,
he is no more legally responsible for his acts than would be the
man congenitally insane, or insane from violent injury to the
brain.'' *(People* v. *Fellows,* 122 Cal. 233, 239, [54 Pac. 830,
832] ; see, also, *People* v. *Travers,* 88 Cal. 233, 239, [26 Pac.
88] ; *People* v. *Rogers,* 18 N. Y. 9, [72 Am. Dec. 484] ; *Peo-
ple* v. *Hower,* 151 Cal. 638, 642, 643, [91 Pac. 507].)

While there can be no doubt that the case as made by the
evidence justified the giving of an instruction upon settled
insanity brought about by an incessant and excessive use of
intoxicating liquors for a long period of time prior to the
commission of the assault, we believe that those rejected in-
structions which purported to contain concrete statements of
the law as applied to the present case were, under the evi-
dence, framed in language entirely too general.  The evi-
dence strongly tends to show—indeed, there is no other char-
acter of showing upon that subject—that, to whatever extent
the defendant's mentality had been impaired, his condition
in that regard had been caused by the use of intoxicants, but
some of the instructions proposed by the accused but rejected
were so phrased as to have submitted to the jury, if given,
the question, not whether the defendant was afflicted with
settled insanity caused by the use of intoxicating liquors,
but whether from any cause he was the victim of permanent
insanity, as to which latter proposition there was no evidence
presented or received.  All the *concrete* instructions on the
question of insanity *in this case* should have been, with
proper qualifications, made applicable solely to insanity
caused by the use of intoxicating liquors, so that the jury
could not have been misled as to the recognized distinction
in law between the mental derangement so caused which
would not excuse a criminal act and the insanity so caused

which would, because of a defect of criminal or any intent necessarily the result of such insanity, excuse such an act. This is not to say, however, that an abstract or a *general* instruction on the question of insanity as applied to crimes should not have been given. To the contrary, we think such an instruction should have been submitted for the purpose of enlightening the jury upon the general proposition that one committing a criminal act while laboring under a state of "settled" insanity resulting from any cause whatsoever cannot be held liable for such act.

But we are of the opinion that the learned trial judge, ordinarily singularly accurate and correct in the statement of pertinent legal principles to juries, permitted himself to be led into error seriously prejudicing the defendant by giving an instruction in which, without qualification, it was declared: "On this subject [that of insanity] the appellate court in a recent decision uses this language, which I will read to you as a part of the instructions in this case: 'Defendant's normal condition was that of a sane man. His alleged mental derangement was not only transient in character, but such condition was the result of his voluntary acts in the use of alcoholic liquors. Under such circumstances, one prosecuted for the commission of a crime cannot urge such condition as a defense thereto.' "

The foregoing language was taken from the opinion in the case of *People* v. *Bremer,* 24 Cal. App. 315, 316, 317, [141 Pac. 222], and the principle stated thereby is unquestionably correct as an abstract proposition. But, as applied to the present case, the instruction plainly invaded the province of the jury. Whether the defendant's mental derangement was only of "a transient character" and his condition the result "of his voluntary acts in the use of alcoholic liquors," was one of the most important questions of fact involved in the case, and one, obviously, whose solution was solely and exclusively a function of the jury. It has been suggested, however, that, since the court declared that it was taken from an appellate court decision, the instruction, so far as it purports to deal with facts, must be viewed as having reference not to the present case but to the case from the opinion in which its language was taken, and that its effect, therefore, so far as this case was concerned, was merely to state the application generally of the rule relating to the effect of voluntary

intoxication upon the commission of a criminal act by one when suffering from a mental derangement so superinduced. But we do not feel at liberty to so view the instruction or to declare that the jury did not understand it as applying particularly to this case. While the court did explain that the language was taken from the decision in another case, it also declared that it would be adopted as part of the instructions in the case at bar; and from this it is to be assumed, as we may justly presume the jury assumed, that, according to the opinion of the court, the facts of this case were precisely the same as the facts in the case giving rise to the language of the instruction, and that the principle therein declared was, therefore, peculiarly applicable and pertinent to the present case. In any event, as stated, the instruction, notwithstanding the particular source whence it was derived, was expressly made a part of the court's charge, and, as declared, it involved a clear instruction upon a vital question of fact in the case. And, since the effect of the instruction was to take from the jury one of the most vital questions of fact in the case, it cannot, in our opinion, be held that the error in giving it is one of those which may properly be said, after a review and consideration of the entire record, not to have resulted in a miscarriage of justice. It is very true, as well we may suggest in the present connection, that if the defendant was not wholly irresponsible by reason of insanity when he attacked his wife, his assault upon her was unprovoked and of a most atrocious character; but, however vicious and unjustifiable his attack might have been, he was entitled to have his only defense, viz, insanity, passed upon and determined solely by the jury.

The judgment and the order are reversed and the cause remanded.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 14, 1916, and the following opinion then rendered thereon:

HART, J.—In their petition, counsel for the people say: "On the outset of this matter we admit that the decision heretofore rendered in this case is correct in principle, but

we claim that the people tried one case and the court decided another.''

The point is that the defendant, at the trial, tried his case solely upon the theory of temporary insanity brought on by ''recent indulgence in alcoholism''; that such was the theory upon which the learned trial court instructed the jury, and that this court decided the case upon the erroneous supposition that the defense interposed by the defendant was that he was wholly irresponsible and not accountable in law for his act because of settled insanity superinduced by the excessive use of intoxicating liquors.

In proof of their position, counsel for the people call attention to certain language of the attorney for the defendant in his opening statement to the jury, in which he declared: ''In other words, I think, gentlemen, we will show you beyond question in this case that Frank Goodrum, at the time this assault was made, knew nothing about it; that he was simply laboring under a case of *delirium tremens*—simply insane from the effect of alcohol that he had consumed in the week or two before that, and that he was in a state of mind not to be accountable for what he did. We will show you that the acts that he did in the manner in which this offense has been portrayed here were not natural, but unusual —an improbable way of doing that kind of thing; that he had nothing against his wife at any time. Now, I say if we show you that, then that is a defense to this action.'' Again, in his opening address, the attorney said: ''We will show you that he was nervous; that he had all the indications, gentlemen, that make up a case of alcoholic insanity—not drunkenness, gentlemen, but the effects of alcohol after the stimulant has died out—the effect on the nerves. . . . I think I will show you what I have said, and even more on that line.''

Thus, it is contended, the counsel for the defendant expressly limited the purpose of proof upon the question of the mental condition of the accused at the time of the commission of the alleged assault to the establishment of the fact that he was suffering only from temporary mental derangement as the result of the use of intoxicating liquors, and this proposition is, it is asserted, emphasized and clearly sustained by the statement of counsel that he would show that the defendant, on the occasion of the assault, was suffering from an

attack of *delirium tremens,* a condition which is a mere temporary effect of alcoholism and not a characteristic of settled insanity caused by alcoholism.

It is to be conceded that the attorney for the accused, in his opening statement to the jury, was not altogether happy in his expressions or the presentation of his case as he proposed to make it. Obviously, mere temporary mental derangement resulting from the use of intoxicants, whether it manifests itself in the form of *delirium tremens* or in some milder form, cannot operate to absolve a person from liability for a criminal act, and testimony disclosing that precise mental state at the time the criminal act was committed is admissible only where the existence of a particular purpose, motive, or intent is a necessary element of the crime charged, and then it may be considered by the jury, not as the predicate for the full exoneration of the accused, but solely to enable or assist them in determining the purpose, motive, or intent with which he committed the act. (Pen. Code, sec. 22.)

But we think that the opening statement of counsel is broader in its scope than the people ascribe to it. Whether the attorney for the defendant, in his opening statement, did or did not state to the jury in apt technical language that he proposed to rely upon the defense of insanity for the complete exoneration of the accused, it is clear to our minds that said statement clearly enough and so sufficiently shows that that was what he intended and endeavored therein to say. On numerous occasions, in the course of his statement, he declared that he would show, or attempt to show, that the defendant, when the assault was made, was insane; that he was suffering from "alcoholic insanity," adding, in one instance, when using the latter language, the statement, "not drunkenness," thus attempting to emphasize the proposition that he did not refer to mere temporary mental aberration or derangement, but to settled insanity; that the accused was "in a state of mind not to be accountable for what he did," and many other like expressions, all indicating with sufficient clearness that what he intended to say to the jury was that he proposed to prove that the defendant, by the excessive use of intoxicating liquors for a time prior to the assault, had become afflicted with insanity to a degree that, in a legal

view, he was, at the time of the assault, wholly irresponsible and not accountable for his act.

But a defendant, in a criminal case, in making a defense and proving his case, is not necessarily required to remain strictly within the literal scope of the defense outlined by his counsel in his opening address to the jury. It may happen, as doubtless it has happened, that a lawyer may not succeed in stating his case to the jury in a strictly proper manner or in correct technical nomenclature. This may naturally occur in a criminal case where the attorney for the defendant, generally well learned in the law, has had no experience in the practice of the criminal law, and whose practical familiarity with the rules and doctrines of that branch of jurisprudence is decidedly limited. Hence, that would be a strange, and, indeed, a manifestly unjust rule which would, in a case where his defense had not been properly explained in the opening statement, preclude the defendant from making his case as he intended to prove it, and as he had reason to believe he could only prove it as in complete answer to the charge against him. But, even assuming that the opening statement of counsel for the accused in this case is amenable to the interpretation to which it is subjected by the people, the trial court in this case, so far as the proof was concerned, accorded to the defendant the right to traverse a broader field than the said opening statement, *as so interpreted,* warranted; for it allowed opinion testimony of intimate acquaintances of the defendant that he was insane at the time, or in near proximity to the time, at which the assault occurred. This testimony, even if it may truly be said that the opening statement did not, squarely and broadly brought into the case as a vitally important issue therein the question whether the defendant was insane to the extent that he was so bereft of reason and the power of volition as to have rendered him wholly irresponsible for his act. And the fact that the testimony offered in support of that issue might have been insufficient in probative force to prove it by the requisite degree of proof, or the fact that other witnesses might have given testimony tending to show or even satisfactorily showing that the mental condition of the accused was only temporary and the result of mere drunkenness, could not have the effect of taking insanity from the case as one of the vital issues. The issue was there and some testi-

mony received in its support, and, as declared in our former opinion and as is obviously true, it was wholly for the jury to say whether it was proved to a sufficient degree to entitle the defendant to an acquittal on the ground that thus he was not in a mental condition to be responsible, legally, for the assault. Hence it was, as we have held, error, prejudicial to the accused, for the court to have practically taken that question from the jury, and, moreover, under our view of the record as above pointed out, we may add to what we said in our former opinion that the court further erred to the serious detriment of the defendant by confining the jury to the consideration of the evidence upon the defendant's intoxication to the mere determination by them of the particular "purpose, motive, or intent" with which the accused committed the act. In other words, we think that an instruction on insanity brought on by the use of intoxicating liquors that will, in law, excuse a criminal act, should have been given, and that, such an instruction having been proposed by the defendant and disallowed, the action of the court in that respect constituted prejudicial error.

There can be no possible doubt that the trial court intended to and did, under its conception of the case, give the defendant a fair trial; but we think the scope of the defendant's position in the case was misapprehended by the prosecuting attorney and that the court, erroneously adopting the misconceived theory of the people, made the errors above referred to, and which we think undoubtedly demanded the reversal heretofore ordered.

Rehearing denied.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 9, 1916.