[Crim. No. 1614.   Third Appellate District.—April 26, 1938.]

THE PEOPLE, Respondent, v. LIM DUM DONG, Appellant.

Busick & Busick and Charles O. Busick, Jr., for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with the crime of an assault with a deadly weapon with intent to commit murder. By consent of court the offense was reduced to an assault with a deadly weapon. The defendant admitted that he shot Susie Yamagawa with a revolver, but pleaded that he was irresponsible for the act because he was then insane and therefore did not know the nature of the act which he performed. The question of the sanity of the defendant was tried with a jury. The jury rendered a verdict finding that the defendant was sane at the time of shooting. A motion for new trial was denied. From the judgment of commitment which was pronounced and from the order denying a new trial this appeal was perfected.

It is contended the verdict and judgment are not supported by the evidence; that the court erred in refusing to give to the jury a proffered instruction, and also erred in denying the motion for a new trial.

The defendant belongs to the Chinese race. He was addicted to the use of morphine and cocaine for some ten years prior to the time of the offense with which he was charged. It is apparent he used narcotics just before the shooting, which occurred September 29, 1937. A Japanese girl by the name of Susie Yamagawa, who was a total stranger to the defendant, was employed selling tickets in the box office

of a Sacramento moving picture theater. No motive for the crime appears except that a witness testified the defendant brooded over the Oriental war which is now in progress between China and Japan, and that he said he knew of no reason why he should pay a Japanese girl for admission to a picture show. On the evening of September 29, 1937, he suddenly appeared at the box office, and without uttering a word, he shot Susie Yamagawa with a revolver. He then shot himself with the same revolver. Both persons were taken to the receiving hospital and subsequently recovered.

Two reputable and experienced alienists, who were appointed by the court to investigate and report regarding the sanity of the defendant at the time of the shooting, testified that, as a result of the use of either morphine or cocaine shortly preceding the shooting, they were of the opinion he was then so temporarily deranged in mind that he was incapable of distinguishing between right and wrong, and that he did not then know the nature of the act with which he was charged, or that it was wrong to shoot the girl. Other witnesses testified to acts and conduct of the defendant, from which they concluded he was at least temporarily insane. The physicians testified that when they examined the defendant three months after the shooting occurred, he was lucid and sane, and that he was only rendered temporarily insane for a short period after using morphine or cocaine in excessive quantities.

Doctor Burt F. Howard collaborated with Doctor Margaret Smythe, superintendent of the Stockton State Hospital in the examination of the defendant. Both agreed that the defendant was ordinarily sane and responsible for his conduct, but that he was temporarily insane at the time of the shooting on September 29, 1937, because of the effect of morphine or cocaine which he had been using at that time. In the course of their examination the doctors talked with the defendant, who told them of his habit of using narcotics for ten years past. Doctor Howard said:

"When I examined this man [about three months after the time of the shooting], he seemed to be pretty clear mentally, he gave a pretty good story,—I saw no evidence of hallucinations or delusions at that time; in fact, he was able to tell me a good deal about his past life, and spoke English pretty well. . . . I thought he was under the influence of drugs [at the time of the shooting] to such an extent he didn't know what he was doing, either morphine or cocaine; he told

me he used morphine for ten years, and had used cocaine too; so, he was a pretty definite case of narcotic user. Q. I take it your conclusion is, insanity only exists while he is under the use of narcotic drugs, . . . ? A. That is what I concluded from my examination. Q. And any period of insanity, I take it, you found he went through on that evening of September 29th, was due to a recent use of narcotic drugs? A. I think so.''

In addition to the use of narcotics, the defendant also told the doctor he was in the habit of drinking intoxicating liquor. He said the defendant told him, ''He would take as much as ten glasses of Chinese gin a day.'' The jury, however, found that the defendant was sane at the time of the commission of the crime with which he was charged.

The question to be determined is whether this finding of the jury is supported by the evidence. It is clear from the evidence of the physicians that neither of them believed the defendant was afflicted with permanent, fixed or settled insanity as a result of his habitual use of narcotics for a period of time long enough to have destroyed his faculties so as to render him irresponsible for his acts or conduct. Both alienists agreed he was sane and rational at the time they examined him three months after the commission of the crime with which he was charged. But both expert witnesses testified that it was their opinion he was mentally irresponsible for shooting the Japanese girl, because of the temporary effect of narcotics which he had recently taken, and that he therefore then failed to appreciate the difference between right and wrong, and that he did not then know the act of shooting was wrong.

Under the provisions of section 22 of the Penal Code the rule is well established in California that temporary aberration of the mind caused by voluntary intoxication induced by excessive use of liquor or narcotics is not a valid defense to a charge of crime. To relieve one of responsibility for the commission of an offense on the ground of voluntary intoxication from the effect of liquor or narcotics, it is necessary to prove that the brain has become permanently affected thereby. (*People* v. *Hower*, 151 Cal. 638 [91 Pac. 507]; *People* v. *Fellows*, 122 Cal. 233 [54 Pac. 830]; *People* v. *Bremer*, 24 Cal. App. 315 [141 Pac. 222]; *People* v. *Goodrum*, 31 Cal. App. 430 [160 Pac. 690].)

Section 22 of the Penal Code provides that:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. · But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

In the Hower case, *supra,* in which a judgment convicting the defendant of the crime of an assault with intent to commit murder was affirmed, the court specifically disapproved an instruction to the effect that the jury must acquit the accused if they found that at the time of the offense his mind was so affected by the inordinate use of intoxicating liquor that he was then unable to tell what he was doing and that he was then not capable of distinguishing between right and wrong on that account. The court said:

"It disregards entirely the question as to whether the intoxication was voluntary. . . . It was therefore in plain conflict with the provisions of section 22 of the Penal Code."

Quoting with approval from the case of *People* v. *Rogers,* 18 N. Y. 9 [72 Am. Dec. 484], and *People* v. *Travers,* 88 Cal. 233, 239 [26 Pac. 88], the court further said in the Hower opinion:

" 'There is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every man owes to his fellowmen, and to society, to say nothing of more solemn obligations, to preserve, so far as lies in his power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable, but if, by a voluntary act, he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which, in that state, he may do to others or to society.' . . . 'It must be "settled insanity", and not merely a temporary mental condition produced by recent use of intoxicating liquor' " which will relieve one of the responsibility of his criminal act.

Our courts have strictly adhered to the foregoing salutary principle of law. That doctrine is settled. The decisions are uniform on that subject.

■ In the present case, since the higher offense of an alleged assault with a deadly weapon with the intention of committing murder was withdrawn, and the defendant was merely tried and convicted of the crime of assault with a deadly weapon, it was not necessary for the prosecution to specifically prove the defendant intended to injure the Japanese girl by firing the revolver at her. (*People* v. *Gordan,* 103 Cal. 568 [37 Pac. 534] ; *People* v. *Marseiler,* 70 Cal. 98 [11 Pac. 503] ; *People* v. *Lopez,* 81 Cal. App. 199 [253 Pac. 169].)

■ The evidence of the inordinate use of narcotics by the defendant in the present case was, however, competent and proper for the consideration of the jury under the plea of insanity to determine whether the use of the drugs was voluntary, not taken for medicinal purposes, and whether it had created a permanent derangement of the mind and not a mere temporary aberration thereof. ■ Both alienists testified that the use of narcotics by the defendant resulted in mere temporary derangement of his mind and that it was not permanently affected thereby. They said it impaired his mind only "for a period of about fifty-two hours" and that he was lucid and sane when they examined him three months later. That evidence accords with the verdict of the jury, which determined that he was sane at the time of the commission of the offense. That verdict infers that the jury believed from the evidence that while the defendant's mind was temporarily affected by the use of narcotics at the time of the offense, it was, nevertheless, the result of his own voluntary use of the drugs.

Section 22 of the Penal Code, limiting the purpose for which evidence of voluntary intoxication may be considered by the jury, applies alike to all forms of voluntary intoxication whether it is induced by the inordinate use of liquor or narcotics. The same rule may be applied to temporary derangement of the mind caused by the excessive use of morphine or cocaine. (*People* v. *Sameniego,* 118 Cal. App. 165, 173 [4 Pac. (2d) 809, 5 Pac. (2d) 653] ; 16 C. J. 110, sec. 88.) In the authority last cited it is said:

"If a person becomes temporarily insane through the voluntary immoderate use of morphine, cocaine, or other drugs, not taken as a medicine, his responsibility would clearly seem to be the same as that of a person drunk from the voluntary use of intoxicating liquors."

The verdict and judgment of commitment were therefore not contrary to the evidence. There is adequate evidence to support them.

██ The court properly refused to give to the jury the defendant's proposed instruction as follows:

"You are instructed that if you find that defendant committed the act charged in the information, *without being conscious thereof*, then he was incapable of committing a crime; and your verdict should be that defendant was insane at the time the offense was committed."

As was said in the Hower case, *supra*, the preceding proffered instruction omits the necessary element of consciousness of the nature of an act which is the result of voluntary intoxication or temporary mental derangement caused by an inordinate use of narcotics. The instruction should have indicated to the jury that the lack of consciousness of the nature of the act which would relieve the defendant from responsibility must have resulted from permanent insanity as distinguished from temporary insanity caused by the defendant's voluntary use of morphine or cocaine.

The case of *People* v. *Methever*, 132 Cal. 326 [64 Pac. 481], upon which the appellant relies in support of his contention that the court erred in refusing the foregoing instruction, is not in conflict with what we have previously said regarding that subject. In that case the judgment of conviction of the crime of murder, upon which the death penalty was imposed, was affirmed. It was contended the crime was committed while the defendant was suffering from delirium tremens. He pleaded insanity caused by excessive use of intoxicating liquor evidenced by his state of delirium tremens. He offered an instruction based on subdivision five of section 26 of the Penal Code, containing the admonition that if the jury found that he *"was not conscious of the act when he committed it, . . .* the jury must acquit the defendant". The above italicized language was stricken from the instruction. That modification was charged as erroneous. The court approved that modification of the instruction. It said:

"That subdivision 5 does not contemplate cases of unsound mind. . . . There is no reason why subdivision 5 should be given any broader construction, for as to persons afflicted with unsound minds, subdivisions 2 and 3 include them all.

"It may be further suggested, in answer to the claim that the defendant did the act *while unconscious thereof by rea-*

*son of his insanity,* that instructions covering every phase of the question of insanity, including that of delirium tremens, were presented to the jury, . . . and where the defense is insanity, that is all the defendant is entitled to at the hands of the court. If the law excuses him for his acts under these circumstances, it is not by reason of his unconsciousness at the time the act is committed, but by reason of his insanity.''

The preceding language, which was used in the Methever case, fits the situation in the present case exactly. The only phrase of importance to the defendant in the instruction which was refused in the present case is almost identical with the one which was eliminated from the Methever charge. The circumstances with relation to that omitted phrase are similar in both actions. In this case we are of the opinion the jury was very fully and fairly instructed regarding the issue of insanity. Among other instructions which were given to the jury, at the request of the defendant, is the following one:

''The court instructs you that insanity means such a diseased and deranged condition of the mental faculties as to render a person incapable of distinguishing between right and wrong in relation to the act with which he is charged.

''If the defendant, at the time of committing the act with which he is charged, was laboring under such a defect of reason, from settled disease of the mind, temporary or otherwise, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong, he is not responsible therefor.''

We are of the opinion the preceding charge substantially covers the only valid portion of the rejected instruction and that it is really more favorable to the defendant than the one which was refused. The preceding language charged the jury that if the defendant, because of a settled disease of the mind, did not know the nature or quality of the act with which he was charged, or that it was wrong, he could not be held responsible for it. The rejected instruction omits to base the conclusion on a condition of insanity, but declares that if the defendant committed the act without being conscious thereof, he must be found insane. Of course, the unconscious performance of an act does not necessarily constitute insanity. A somnambulist may unconsciously perform an act in his sleep, but that is not evidence of insanity. The instruction in question was properly refused.

For the reasons heretofore assigned the motion for a new trial was properly denied.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.