PEOPLE OF PUERTO RICO, EX REL. NEMESIO LÓPEZ, Relator, *v.* LUIS PÉREZ PEÑA, Defendant and Appellant.

No. 7678. Argued February 21, 1939.—Decided May 16, 1939.

764

*Antonio Reyes Delgado* for appellant. *M. Orsini Martínez* for relator. *B. Fernández García, Attorney General,* for The People of Puerto Rico.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

After obtaining authority from the District Court of San Juan on November 3, 1937, the Attorney General, on behalf of Nemesio López, filed before that court, in the name of the People of Puerto Rico, an information of the nature of quo warranto against Luis. Pérez Peña. It is alleged in the information that the relator is of legal age, a resident of San Juan, a citizen of the United States, taxpayer in the Capital of Puerto Rico, and in full power and possession of his civil and political capacity, and that the defendant Luis Pérez Peña held on that date the office of Capital Commissioner, to which he had been elected in the general elections

of 1936. That the aforesaid Luis Pérez Peña was holding office illegally for the following reasons:

"(a) Because he is suffering civil interdiction on account of having been convicted of a felony and he served sentence without being pardoned by competent authority.

"(b) Because he was excluded from the voting lists of the island of Puerto Rico and was not a qualified voter of the Municipality of San Juan nor of any other municipality or electoral ward of Puerto Rico.

"(c) Because the petitioner lacks any clear, effective and prompt remedy in law to deprive the aforesaid Luis Pérez Peña of the office of member of the Board of Commissioners of San Juan, which he is holding illegally, and only has the present remedy of quo warranto which he now uses."

The information ends asking that a summons of quo warranto be issued, ordering the respondent to appear in court on the day and hour set therefor "that he may acquiesce to what has been solicited by the petitioner, or else justify that by virtue of competent authority he is holding the office of member of the Board of Commissioners of San Juan and discharging the duties of said office according to the law and with full political and lawful capacity therefor, and finally, that this Honorable Court renders judgment declaring that Luis Pérez Peña holds unlawfully the office of member of the Board of Commissioners of San Juan, and that it is further declared that he unlawfully usurps the exercise of such office, and that he be immediately ousted from the aforesaid office, imposing upon him the payment of costs, expenses and disbursements, and attorney's fees in this action."

The proper summons was issued and the defendant was given a term up to November 12, 1937, to make a return. On that date he filed a demurrer pleading that the information lacked facts for a cause of action. The demurrer was overruled and an answer filed. The defendant denied that the relator was an American citizen, that he was in full power and possession of his civil and political capacity, and also denied his condition as taxpayer to the Government of the

Capital of Puerto Rico. He accepted that he was in possession of the office of Commissioner of the Capital of Puerto Rico and that he was elected in the general elections of November, 1936. He alleged that he was not holding the aforesaid office unlawfully; that he was not suffering civil interdiction, even though he had been convicted of a felony or had served sentence therefor; that he is a qualified voter of the Municipality of San Juan because he has never been convicted of a felony or of an electoral offense. He alleged affirmatively that no valid judgment has ever been rendered against him, whether for a felony or for an electoral offense which unqualifies him from being a voter; that he has never been subject to trial for a felony before an impartial jury and that he has not had a fair trial according to the Constitution of the United States, the Organic Act, and the laws of Puerto Rico; that any judgment which might exist against the defendant is null, unexistent, and has no value, because the due processes of law have not been followed. He finally alleged that the relator has no interest in this matter and ends with the prayer that the information be dismissed and the relator sentenced to pay costs, expenses and attorney's fees. On December 10, 1937, the oral trial was held with the attendance of all parties, and on the 28th of the same month, for the reasons expressed in the opinion rendered therefor, the District Court of San Juan delivered the following judgment:

"For the reasons disclosed in the statement of facts and opinion, filed in the record and which is hereby made a part of this judgment, this cause is adjudged, allowing the petition, and it is decided that Luis Pérez Peña is illegally holding office as member of the Board of Commissioners of San Juan and usurping the exercise of such office in the Government of the Capital of Puerto Rico, and in consequence it is ordered and decreed that he be ousted from such office, and he shall immediately retire from said office and cease performing the duties thereof. The Secretary will notify this judgment to the Board of Commissioners of San Juan, through its President, and to the Attorney General of Puerto Rico, that they may consider said

Luis Pérez Peña ousted from the office he holds; and the marshal of this Court will notify this judgment personally to the respondent Luis Pérez Peña, with the caution that unless he immediately ceases in the exercise of the office of member of the Board of Commissioners of San Juan he can be ejected from the same. Costs are imposed upon the respondent, among which are included One Hunderd Dollars ($100.00) as attorney's fees of the plaintiff party.''

· Not being satisfied with the judgment previously copied, the defendant appealed to this court charging the lower court with having committed the following errors:

"*First:* The District Court of San Juan committed error when it overruled the demurrer of want of facts in the petition, enough to constitute a legal cause to dismiss the defendant appellant.

"*Second:* The District Court of San Juan committed a grave error in giving value, as proof, to the certified copy of the judgment presented in evidence by the petitioner to show that Luis Pérez Peña, the defendant-appellant, was convicted of arson (a felony); and an even more serious error was committed by the lower court when it decided that such judgment presented in evidence cannot be attacked collaterally in the proceedings object of this appeal.

"*Third:* The lower court committed error when it said that Act No. 32 of 1933, amending the law which created the Government of the Capital, cannot be considered as amending the provisions of Section 183 of the Political Code of Puerto Rico; and it also committed error when it declared that a special law cannot have the meaning of amending the provisions contained in a law of general character previously passed.

"*Fourth:* The lower court committed error when it decided that Act No. 10, passed by the Legislature in 1937, amending Section 50 of Act No. 99, which creates the Special Government for the Capital, did not cure the defect or limitation that the defendant-appellant Luis Pérez Peña might have, when he was elected in 1936 to the office from which it is wanted to dismiss him; and in the same way the District Court of San Juan committed error in rendering judgment against the defendant-appellant, ignoring the fact that the limitation or bars that the defendant might have before his nomination and election were corrected when he was elected to the aforesaid office from which it is wanted to dismiss him.

· "*Fifth:* The District Court of San Juan committed serious error when it allowed the petition of quo warranto in this case, it having

been shown that Pérez Peña, the defendant-appellant is a voter of the Municipality of San Juan and that he voted in the elections of 1936, especially when before the petition of quo warranto was filed his condition as voter was not destroyed, following the procedure fixed for such impeachments by the Electoral Law now in force in Puerto Rico.

"*Sixth:* Finally, we allege that the lower court committed error in allowing the petition, and that its judgment is contrary to the law and to the evidence."

The appellee filed a motion asking that the appeal be dismissed as frivolous and after hearing the parties the issue was finally submitted to our consideration on February 21st last.

 The appellant points as first error that the lower court overruled his demurrer which attacks the sufficiency of the information.

It is alleged in the information that the appellant holds the office of Commissioner of the Capital of Puerto Rico unlawfully, because he was convicted of and served sentence for, a felony, to wit, arson, without having been pardoned.

To this end the Political Code provides:

"Section 183.—No person shall be elected to an Insluar *or local office who does not possess the qualifications required of electors.*"

The qualifications referred to in the provision previously transcribed are found in section 6 of Act No. 79 of June 25, 1919 (Session Laws, p. 530), which copied literally, says:

"Section 6.—The following persons shall not be allowed to register, and if registered shall not vote: (*a*) those judicially declared unqualified; (*b*) those convicted of electoral crimes or felony, except when pardoned; (*c*) those living on public charity or who are inmates of public charitable institutions; (*d*) those failing to vote at any general election held subsequent to the approval of this Act, but this bar shall exist only during the two following general elections, and shall cease to exist when the voter shows that he had justified cause for not voting, as hereinafter provided."

It seems evident that it being indispensable for eligibility to public office to possess the qualifications required of electors, and the law providing that those convicted of electoral crimes or felony cannot be voters except when pardoned, when the information alleged that the defendant did not qualify as a voter because he had been convicted of the crime of arson, which is a felony, it displays facts showing that the defendant unlawfully holds the office to which he was elected, and that his dismissal therefrom is in order.

The appellant argues, however, that the phrase "those convicted of electoral crimes or felony" that appears in section 6 aforesaid, refers to convicts who are serving sentence when the election was held and not to those who like the appellant were free at that time. The appellant arrives at this conclusion comparing the phrase "person who has been convicted" which appears in Section 6 of the Law of March 8, 1906, with "those convicted" which appears in the law now in force previously copied. In our minds there is no difference between both phrases, except that "those convicted" is a shorter phrase than the previous one, without changing anyway the meaning of the former. If we construct the phrase as the appellant pretends, not only would we scorn the clear and unmistakable letter of the law, but also that construction would lead to absurdity.

From what does the appellant infer that the phrase "those convicted" is exclusively limited to those convicts who are serving sentence? If the deprivation of suffrage were limited to those serving sentence for felony or electoral crime at the date of election, why establish an exception in favor of convicts "when pardoned" if as free are those who have been granted liberty because their term is up as those who have been pardoned? Besides, why limit the deprivation to those who serve sentence for felony or electoral crime, if no one who is in prison on election day has the right to come out to exercise the right to vote although his imprisonment is for infraction of a mere municipal ordinance?

■ The appellant's incapacity as a voter, and therefore, to be elected to the office in issue, is evident, without his incapacity having been removed by the fact that he voted illegally in the 1936 elections, because it is known that an unlawful or fraudulent act does not create rights.

■ The appellant argues that even accepting that he was not a qualified voter of the Municipality of San Juan, his election to the office of member of the Board of Commission- · ers of the Government of the Capital is valid because the special law that governs the Government of the Capital of Puerto Rico in none of its sections establishes the qualifications necessary to be eligible to such office. The appellant does not forget, however, the categorical provisions of Sections 183 of the Political Code, supra, but tries to evade them alleging that said Code is a law of general character and that Act No. 99 of 1931 (Session Laws, p. 626) is of special character, and that there being conflict between both, the special law prevails over the general one.

But there is no conflict between both statutes. It is precisely because the special law is silent that the general law applies. If the special law required qualifications different or incompatible with those demanded by the Political Code, or expressed, assuming the absurd, that no qualifications were necessary to be a Commissioner of the Capital, in that case a conflict would exist between both laws, and of course the special law would prevail over the general statute.

■ Trying to show that Section 183 of the Political Code is not applicable to officers of the Government of the Capital, the appellant cites Section 1 of the aforesaid Act No. 99 of 1931 (p. 626), as amended by Act No. 32 of 1933 (Session Laws, p. 254), which literally says as follows:

"Section 1.—The Municipality of San Juan, Puerto Rico, as constituted by legislation in force, is hereby abolished. In place of the said Municipality, there is hereby created a body politic and juridic of local government, which shall constitute a special district with the same territorial limits as now pertain to the Government of the

Capital, and whose organisms and officials shall have no powers, restrictions, incompatibilities or impediments other than those provided in this Act or in the Organic Act."

The words "powers, restrictions, incompatibilities or impediments" of course refer to the jurisdiction or powers of the officers and not to their qualifications for eligibility. The legislator wanted to establish a special law for the Capital of Puerto Rico, different from that which existed for the other municipalities of the island and therefore had the care to avoid that by the application of similar provisions of the municipal law in force in the other municipalities the duties and powers imposed by said act could be restricted, prevented or hindered. It cannot be conceived that the intention of the law-maker was to require no qualifications of fitness and morality from those who are to have in their hands the wheel of government of the first and richest city of the island, and otherwise demands them from members of the municipal assembly of the smallest town. If we adopt that construction, the unheard of case might happen that a minor, a foreigner, or what is worst, those convicted of the most infamous crimes, would be eligible as members of the Board of Commissioners of the Capital and could not belong, however, to the municipal assembly of any municipality, no matter how unimportant. The mere exposition of such strange theory is its best rebuttal and it must be discarded. *Armstrong Paint & Varnish Works* v. *Nu-Enamel Corporation*, 83 U. S. (L. ed.) 183, 305 U. S. 315.

We must finally consider, in relation to the demurrer, the lack of interest or legal capacity of the relator to bring this action. It is true that this issue has not been argued in the appellant's brief, but he raised it in his pleadings and discussed it in the lower court, and as said incapacity, if it exists, would affect the sufficiency of the information, it is our duty to discuss it.

Section 2 of the Law establishing the proceedings of quo warranto, which is Section 641 of the Code of Civil Pro-

cedure (1933 ed.), as amended by Act No. 47 of August 7, 1935 (Special Session Laws, p. 530), as to what is pertinent says as follows:

"In case any person should usurp, or unlawfully hold or execute any public office...or any public officer shall have done or suffeerd any act which, by the provisions of the law, involves a forfeiture of his office, . . . . the Attorney General or any district attorney, *either on his own initiative or at the instance of another person,* may file before the Supreme Court of Puerto Rico a petition for an information in the nature of Quo Warranto in the name of The People of Puerto Rico; . . ." (Italics supplied.)

Very similar to our statute is Section 803 of the Code of Civil Procedure of California, which as to what is pertinent says as follows:

"Section 803.—An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state . . ."

The state, in the name of which the action is brought, is the only plaintiff party in the same. As the attorney general may act of his own accord, the character of the relator, when he does not claim the right to hold an office executed by another, is similar to a witness for the prosecution in criminal procedure. Therefore, it is not necessary that he have a special interest in the office in question. · So has been repeatedly decided by the Supreme Court of California, among other cases by those of *The People of the State of California, ex rel. John M. Cage, relator,* v. *Petroleum Rectifying Co.,* 21 Cal. App. (2d) 289; *People* v. *Reclamation District No. 108,* 169 Cal. 786, 147 P. 1176; *People* v. *Sutter Street Railway Co.,* 117 Cal. 604, 612, 49 P. 736; *People* v. *Milk Producers Ass'n.,* 60 Cal. App. 439, 442, and finally that of *People* v. *California Protective Cor-*

*poration,* (1926) 76 Cal. App. 354, 361, from whose opinion we take the following paragraph:

"In support of its contention that respondent has no legal capacity to sue, appellant says that 'the relator,' the Los Angeles Bar Association, 'is not a corporation and therefore has no standing in court to sue in the name of the association.' This contention betrays an inexplicable misunderstanding of the nature of this proceeding and of the relation thereto of the 'People' as plaintiff. The wrong of which complaint is made is of public, not private, concern. The only connection of the bar association with the case is shown by the opening of the complaint, wherein it is recited that the 'People,' by their attorney-general, 'upon the information and complaint of the Los Angeles Bar Association,' complain of defendant and allege the cause of action. The addition of the name of the bar association to the complaint did not make this a private action. It doubtless is true that the arm of the law moved as the result of information given to the attorney-general by the bar association; but that did not make the association the plaintiff in the action."

It is well to distinguish the case at bar from *The People ex rel. Zayas* v. *Santiago,* 38 P.R.R. 627, 630, where this Court, following *Santiago* v. *Feuille,* 10 P.R.R. 408, said:

"As these cases involve the right to public offices the real party in interest is the relator,..."

Both in the case of *The People ex rel. Zayas* v. *Santiago* and in that of *Santiago* v. *Feuille, ubi supra,* the relator claimed for himself a public office to which he claimed to have been lawfully elected and which was being usurped by somebody else. Under such circumstances his interest in the outcome of the proceedings is evident. In the present case the relator does not claim the office for himself. His interest in the matter was simply the one which every citizen has, that the officers who are to rule the city where he lives should be elected according to law. That is why it was said in the case of *Santiago* v. *Feuille:*

"In *quo warranto proceedings, the object of which is to recover an office,* the petitioner is the real party in interest; but where the suit

is in regard to the usurpation of a franchise by a corporation, The People of Puerto Rico is the proper party and must be represented by the Attorney General or one of the district *fiscals."* (Italics supplied.)

The interest of the relator in the case at bar is similar to that of the relator in an action dealing with the usurpation of a franchise by a corporation.

■ In his effort to show that the defendant holds office lawfully, the appellant argues that his election was convalidated and ratified and that all bars were removed by Act No. 10 of March 24, 1937 (Laws of 1936–37, p. 131), amending Section 50 of the aforesaid Act No. 99, supra, which in its pertinent part says as follows:

*"Provided,* That the five members of the Board of Commissioners elected at the general election of 1936 shall continue in office until the end of the terms for which they were elected, and said Board of Commissioners shall be increased in the manner indicated as soon as this Act takes effect."

The appellant would be right if the Legislature had in any form expressly stated its intention to remove the incapacity which might pertain to all or any of the Commissioners, or if, with knowledge of such incapacity, it expressed its will that they remained in their places. But from the law no intention of the legislator arises to ratify or convalidate the illegality of the appellant's election, but that of extending the term, which does not confirm his election. As to the requisites needed for ratification or confirmation, see *Central Bocachica Inc.* v. *Treasurer of Puerto Rico,* ante p. 404, which although it refers to confirmation of contracts, its principles are equally applicable to confirmation or ratification of a void act by statute.

In our judgment, the lower court acted correctly in overruling the demurrer. The first error, therefore, does not exist.

■■ Let us now consider the following one.

The second assignment of error charges that the court, to. evince that the defendant was convicted of arson, gave proof value to a certification of judgment admitted in evidence, which in its pertinent part says as follows:

"District Court of the Judicial District of Arecibo, P. R..—The People of Puerto Rico against Luis Pérez Peña, Jorge Pelet and José Colón Marrero.—Number of the cause 1073.—Crime: Arson.—Judgment.—Delivered March 10, 1921.

"In view of the verdict of the jury rendered against the aforesaid defendants on the 2nd day of the instant month of March, finding the aforesaid Luis Pérez Peña, Jorge Pelet and José Colón Marrero guilty of the crime of arson, the Court in turn declares them convicted of said crime, and sentences each one of the aforesaid defendants Luis Pérez Peña, Jorge Pelet and José Colón Marrero to the penalty of six years imprisonment in the Insular Penitentiary, at hard labor, and fine them to pay the costs of this cause. (Sd.) Enrique Lloreda, Judge.—(Sd.) Manuel L. Corbet, Secretary.

"Juan Ramírez Vega, Secretary of the District Court for the Judicial District of Arecibo, Puerto Rico.—I Hereby Certify: That the preceding is a true and correct copy of the judgment rendered by the aforesaid court in the criminal cause above stated, which was tried before a jury on March 2, 1921, and which judgment was affirmed by the Honorable Supreme Court of Puerto Rico by judgment rendered on June 2, 1922. And by request of the attorney Mario Orsini Martínez I issue these presents under my signature and the official seal of this Court, in the City of Arecibo, P. R. on November 10, 1937.—(Sd.) Juan Ramírez Vega, Secretary, District Court of Arecibo."

Arguing this second assignment of error the appellant maintains that the judgment cited is unexistent because from the same it does not appear that in the act of pronouncement the Court, or the secretary under the former's direction, informed the accused of the nature of the offense charged, the defense he pleaded, the verdict of the jury, nor was he asked whether he had lawful cause to show that judgment should not be passed upon him.

The appellant cites to support him the decisions of this Court established in the cases of *People* v. *Lizardi,* 7 P.R.R.

20, and *People* v. *Muñoz,* 9 P.R.R. 481, as well as Section 318 of the Code of Criminal Procedure, which says:

"When the defendant appears for judgment he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him, and of his plea, and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him."

The cases of *People* v. *Lizardi, supra,* decided May 18, 1904, and *People* v. *Muñoz, supra,* decided December 12, 1905, in no way maintain that a judgment from which it does not expressly appear that Section 318 of the Code of Criminal Procedure has been complied with is unexistent. What was said in the first of those cases by Associate Justice Hernández was the following:

"No bill of exceptions has been filed to show that the trial court had failed to comply with the provision of Section 318 of the Code of Criminal Procedure; but inasmuch as it is stated in the record that the *fiscal* had asked the court for a verdict of guilty, and the attorney for the accused that the latter be acquitted, the court having adjudged the accused guilty of the crime of embezzlement as charged by the *fiscal,* and sentenced him to three years' imprisonment in the penitentiary, without the slightest indication being made as to the provisions of Section 318 of the Code of Criminal Procedure having been complied with, it is reasonable to presume that said section was not applied, as otherwise it would have been so stated in the record, the terms in which the latter is drafted showing rather that aforesaid section was not complied with, thereby depriving the accused of an important means of defense."

"For the reasons above set forth, we are of the opinion that we should reverse the judgment appealed from as rendered by the District Court of Humacao on September 23d of last year, said court being ordered to hold a new trial or to take such other action as may be authorized by law, with costs of the appeal for the account of the People."

It is not strange that in the year 1904, in the transition period during which a new system of criminal procedure was beginning to be applied, the error was committed of hold-

ing, dealing with a court of record as that of Humacao was in the Lizardi case, that the fact that the minutes of the trial does not show that Section 318 of the Code of Criminal Procedure created the presumption that in fact said provision had not been followed. This mistake was corrected later in the cases of *Coll et al.* v. *Rigo*, 16 P.R.R. 302; *Castelló et al.* v. *Pérez et al.*, 21 P.R.R. 191; and *Paniagua* v. *People*, 33 P.R.R. 863, where it has been decided that district courts being courts of record, it is presumed that they have acted with jurisdiction over the parties and the subject-matter unless it clearly appears otherwise.

In California, where Section 1,200 of the Penal Code is equal to 318 of our Code of Criminal Procedure, it has been decided that granting that the accused should be informed by the court or under its direction of the nature of the charge made, of the pleas and the verdict, and that such information does not form a part of the judgment rendered, although the record must show that such statements were made, if they do not appear thereon it is presumed that they were made, unless the accused proves otherwise. *People* v. *Barton*, 88 Cal. 176, 178, 25 Pac. 1117; *People* v. *Ebanks*, 117 Cal. 652, 665; *People* v. *Mack*, 115 Cal. App. 588, 591.

And as to the effect produced on the judgment by the omission of said warnings, it has been decided in California that the omission to ask the defendant if he has any legal reason that prevents passing adverse judgment is not enough to render it an absolutely void judgment when the court had jurisdiction upon the subject matter and upon the accused person. *Ex parte Gibson*, 31 Cal. 619, 627, 91 Am. Dec. 546; *In re Bouchard*, 38 Cal. App. 441, 443. More recently, in 1934, the same California court, in the case of *People* v. *Swift*, 140 Cal. App. 7, 34 P. (2d), 1041, sustained that the omission of the aforesaid warnings on the part of the trial court, although it constitutes error, does not cause reversal of judgment unless the defendant shows he has suffered pre-

judice. See to the same purpose the annotation upon the subject which appears in 113 A.L.R. 821.

That which has been stated carries us to the conclusion that even supposing that the court had not followed the provisions of Section 318 of the Code of Criminal Procedure, such a defect did not make the judgment absolutely void and unexistent.

The second error assigned does not exist either.

The third and fourth assignments of error have been sufficiently discussed when we considered the first one. Neither do they exist.

The fifth assignment of error maintains that the lower court should have dismissed the petition when the appellant proved that he is a voter and that he voted in the 1936 elections in the city of San Juan.

After knowing the provisions of Section 183 of the Political Code previously copied, the error assigned by the appellant does not merit serious consideration. What the law requires before a person is eligible to an insular or municipal office is not that he may have lawfully or unlawfully voted in the last election, but that he is endowed with the required qualifications to be a voter. The evidence conclusively shows that the petitioner does not possess them, because he was convicted of and served sentence for a felony and although he alleges he was pardoned the evidence shows that his sentence punishment only was remitted, which does not include the restitution of civil rights. 39 Harvard Law Review 112 and cases cited. The fact that the petitioner voted unlawfully in the 1936 elections does not affect his rights, since, as we said while considering the first assignment of error, acts done in contravention of law can not be source of rights.

It is left to us to consider the sixth and last error assigned by the appellant. He alleges that the trial court committed error in granting the petition of quo warranto and that the judgment is contrary to law and to the evidence. After the discussion we have made of the previous errors, we shall

have to add little to consider this one. All we need to express is that according to the evidence it conclusively follows that the appellant was convicted of and served sentence for the crime of arson, which is a felony, and that although the punishment thereof was remitted, such a remission does not convey restitution of the civil liberties.

The sixth and last error assigned does not exist, and in consequence thereof the appellee's motion must be granted and the appeal dismissed as frivolous.